George L. Kaeser et al *v.* Town of Starksboro.

(73 A2d 881)

February Term, 1950.

Present: Sherburne, C. J., Jeffords, Cleary, Adams and Blackmer, JJ.

Opinion filed May 2, 1950.

*William S. Burrage* for the plaintiffs.

*Louis Lisman* for the defendant.

ADAMS, J. This is an action of contract in which the plaintiffs seek to recover a balance due on the purchase price of a Marmon Herrington snow plow unit and equipment, for convenience hereafter referred to as a snow plow unit or unit. Trial was by jury. At the close of the evidence both parties moved for a directed verdict. The plaintiffs' motion was denied and the defendant's granted. Verdict and judgment accordingly. The case is here on plaintiffs' exceptions.

It is sufficient to say, without quoting from the record, that both parties in reply to questions by the court stated that there was no question for the jury and it was a matter for the court to decide. It was, therefore, for the court to direct such a verdict as in its judgment the evidence required. *Town of Brattleboro* v. *Carpenter & Tr.,* 104 Vt 158, 164, 158 A 73, and cases cited.

After the parties had thus agreed the court stated in substance: —That the first question was the authority of the two selectmen to enter into the contract for the purchase of the snow plow unit which was to be determined by construction of the pertinent statutes and the action of the town meeting of October 6, 1947; second, that if they had no such authority was the town estopped as a matter of law to deny it, and, third, that the contract was for the sale of a snow plow unit at a stipulated price, payments to be deferred and made as the unit was used; that the town stopped using it at or about the time of March, 1948, town meeting but not because of any mechanical defects and no payments had been made since then; that there was no dispute as to these facts and the legal effect of that situation was for the court to decide.

Counsel for both parties agreed that the court had stated it correctly. The court then denied the plaintiffs' motion for a directed verdict and granted the defendant's and allowed the plaintiffs' exceptions to both rulings.

Both parties having agreed to the court's statement of the questions to be decided, and that there were no disputed issues of fact in regard to these questions and that it was a matter of applying the law to such facts, the issues are thus limited and the statement becomes the theory and law of the case. *Perkins* v. *Vermont Hydro-Electric Corp.,* 106 Vt 367, 417, 177 A 631; *Brezinski* v. *Tyler,* 115 Vt 316, 318, 59 A2d 221.

The contract that the court referred to in its statement was the sale of the snow plow unit by the plaintiffs to the defendant. It was consummated by two of the three selectmen signing a purchase order in the name of the defendant on October 24, 1947, for the unit at a price of $11,484.83. The order was accepted that day and the unit delivered then. No method of payment was specified in the order but it was verbally agreed that payment was to be made by the defendant paying as it used the unit $2.00 an hour while it sanded roads and drew gravel and $6.00 an hour when it plowed snow.

We now consider the first question stated by the court, namely: —the authority of the two selectmen to enter into the contract which is to be determined by construction of the pertinent statutes and the action taken at the town meeting of October 6, 1947. No question has been made as to the authority of two of the three selectmen to act for the defendant. It is well to note, however, that the board could act by a majority. V. S. 47, § 16; *Fair Haven* v. *Stannard,* 111 Vt 49, 53, 10 A2d 214. The parties have briefed no pertinent statute so we confine ourselves to the action of the town meeting.

The warning contained the following articles:—

> "Article 1, To see if the voters will authorize the Selectmen to purchase a 'Marmon Herrington' 5-ton four wheel drive truck with snow plow attached and dump truck body at a cost not to exceed twelve thousand dollars."
> "Article 14. To see if the voters will authorize the Selectmen to purchase a suitable four wheel drive truck with proper equipment for snow removal and highway maintenance at a price not to exceed $13,-000."

The record of the meeting shows the following action on these articles:—

> "Article 1. Arthur Clifford moved to buy a big truck. Motion seconded by Edgar Smith. Moved and seconded to ballot. Total votes 146 Yes 63 No 83."
> "Article 14. Moved to buy a four wheel drive truck. Motion made by H. K. Saunders Seconded by E. K. Eddy, Total votes cast 140 Yes 84 No 56."

The snow plow unit in question was the exact make and type described in Article 1 of the warning except instead of a 5-ton truck it was a 4-5 ton one. It was a four wheel drive truck with dump body and attachable snow removal equipment suitable for highway maintenance as set forth in Article 14.

The defendant says that the negative vote under Article 1 expressly prohibited the selectmen from buying the snow plow unit in question as it is the one specifically described in that Article. We do not agree. The motion to buy a big truck was not relevant or germane to the Article. The moderator could have properly declared it out of order. A voter might have desired to give the selectmen some discretion and not limit them to any particular type or make of truck or equipment. It can be presumed that the voters had read the warning or heard it read when the meeting was opened. They knew that Article 14 was for consideration later. When the moderator allowed a vote on the irrelevant motion to buy a big truck under Article 1, a voter could reasonably have felt that he must vote in the negative on the motion if he was in favor of authorizing the selectmen to purchase under Article 14. The vote was not a negative one on Article 1, but only a negative vote on an irrelevant motion. The defendant relies upon *Wilmot* v. *Lathrop,* 67 Vt 671, 32 A 861. There it was necessary to refer to the margin beside the record of the vote to see what article the vote was on and then refer to the warning to see if the vote was for the purpose stated in the warning. That is true here, but there the similarity ends. There such a reference determined that the vote was relevant and for the purpose stated in the warning; here it determines the opposite. Reference is also made by the defendant to *Adams* v. *Sleeper,* 64 Vt 544, 548-549, 24 A 990. There the vote was sufficiently specific for the purposes set forth in the warning. It does not help the defendant.

Referring to the record under Article 14 and then to the warning for the wording of that article as was done in *Wilmot* v. *Lathrop, supra,* the motion and vote were relevant and germane to the Article. The vote being in the affirmative the selectmen were authorized to purchase any make or type of truck and equipment that conformed to the description in the article within the price limit specified. The snow plow unit in question met those requirements. *Adams* v. *Sleeper, supra; Adams* v. *Hyde,* 27 Vt 221, 223.

As the two selectmen had authority to enter into the contract,

the second question stated by the court, namely, estoppel, if they did not have authority, becomes immaterial.

The third matter stated by the court remains for consideration. In considering this we need to look to the undisputed evidence to amplify the statement made by the court. The unit was first used in October, 1947, and its use continued each month until at or about the time of the March, 1948, town meeting. It was used at first to stock sand piles and then to plow snow and sand roads. The defendant paid the plaintiffs on the purchase price $2,000. as follows:—Dec. 11, 1947, $500.; Dec. 26, $500.; Jan. 7, 1948, $200.; Jan. 27, $300.; Feb. 17, $300.; Mar. 2, $200. Nothing appeared to show the use upon which these payments were based. The defendant also used it to plow snow roads in an adjoining town for which it received a check, dated April 27, 1948, for $178.32 which it did not cash but retained. On June 9, 1948, by letters to the treasurer and selectmen of the defendant the plaintiffs called attention to the fact there was a debt due them from the defendant under the terms of the contract of purchase and demanded payment of the balance with interest after applying the $2,000. credit on principal and interest. They then waited nearly a year before bringing this action.

This Court has said that when a note was payable in installments of "one-half of the income of the dairy" and the signers sold the dairy, the privilege to pay in that manner was waived and it became due at once. *Duchaine* v. *Phoenix,* 101 Vt 308, 310, 143 A 301.

When the debt is an absolute one and payment is postponed until the happening of a contingency which is wholly or partially within the control of the promisor, the law requires the event to be brought about by him or the performance or payment to be made within a reasonable time. The arrangement is mere indulgence or postponement for the promisor's accommodation. Good faith and diligence on his part is imperative. He cannot become obstructive or even remain passive, but must, as promptly as possible, make the contingency come to pass. *Duncan Box & Lumber Co.* v. *Sargent,* 126 W Va 1, 27 SE2d 68, 148 ALR 1072, and cases cited. It is reasonable to suppose that the parties intended that a reasonable effort should be made to cause the event to happen within a reasonable time. 12 Am Jur 857, Contracts, § 301. The law implies a promise to pay within a reasonable time. To hold

that a defendant can avoid payment by his own failure to fulfill his contract "would be a mockery of justice". *Fuller Co.* v. *Brown,* 15 F2d 672. A defendant by abandoning the contract cannot defeat recovery by a plaintiff who has fully performed. *Rosenbeim* v. *Howze,* 179 Cal 309, 176 P 456, and cases cited. See also Anno. 148 ALR, 1075; Anno. LRA, 1917B, 1050.

Applying the foregoing law to the facts here the plaintiffs' motion should have been granted instead of the defendant's.

*Judgment reversed and judgment for the plaintiffs to recover the sum of $9,484.83 with interest thereon from October 24, 1947, with costs.*