A. J. Wolfe Company *vs.* Baltimore Contractors, Inc. & another.[1]

Suffolk.  December 4, 1968. — February 7, 1969.

Present: Wilkins, C.J., Cutter, Kirk, Spiegel, & Reardon, JJ.

*Contract*, Building contract, Subcontract, Performance and breach. *Practice, Civil*, Fusion of cases. *Equity Pleading and Practice*, Fusion of cases.

A provision of a subcontract for electrical work in the construction of a building, that payments by the general contractor on monthly requisitions submitted by the subcontractor should be made "within 10 days after" receipt by the general contractor of "monthly progress payments" by the owners, did not make such receipts a condition precedent to payments to the subcontractor by the general contractor, but merely set a time for the payments. [365]

Under a provision of a subcontract for electrical work in the construction of a building, that if final payment to the general contractor by the owners should be withheld because of a dispute between them "which in no way involves . . . [the subcontractor's] work . . . then the balance" due the subcontractor from the general contractor should be paid within ninety days after demand, where it appeared that only a minor portion of the subcontractor's work was in dispute, he was entitled to be paid for the portion not in dispute within a reasonable time after demand. [368]

Under a provision of a contract between the general contractor in the construction of a building and a subcontractor, that "Unless the

---

[1] The Aetna Casualty and Surety Company.

parties otherwise agree in writing" prices for extras should be determined in a specified manner, it was held that written orders for extra work given by the general contractor either naming fixed prices therefor or providing for payment on a time and materials basis constituted a method of determining prices to which the parties did "otherwise agree in writing," and the manner specified in such provision was not applicable. [369]

An award in an arbitration between the general contractor in the construction of a building and the owners was properly excluded at the trial of an action against the general contractor by a subcontractor for payment for extra work not shown to have been involved in the arbitration. [370]

The general contractor in the construction of a building and the surety on a bond furnished by him to the owners showed no prejudice arising from an order in a suit in equity, after the suit and an earlier action at law had been consolidated for trial and tried, that the proceedings be "fused into a single proceeding," the suit, where it appeared that the action had been brought by a subcontractor against the general contractor to recover an amount due under the subcontract, that the suit had been brought by the subcontractor against the general contractor and the surety to reach and apply assets of the general contractor and to have determined the amount owed by him to the subcontractor, and that the bond, naming the subcontractor as obligee, had been purportedly given to dissolve an attachment made by the subcontractor in the action, but it did not appear that the bond, which was brought into court in the suit only as a result of an interlocutory decree, was ever so delivered to the subcontractor or so deposited in court as to give him rights to enforce it to satisfy the amount found due to him from the general contractor. [370–372]

CONTRACT. Writ in the Superior Court dated December 6, 1965.

BILL IN EQUITY filed in the same court on April 14, 1967.

The cases were consolidated for trial and heard by *Kalus*, J.

*Joseph H. Elcock, Jr.*, for the defendants.

*Jerrold A. Olanoff* (*Sally A. Corwin* with him) for the plaintiff.

CUTTER, J. A subcontractor for electrical work (Wolfe) on a Cambridge apartment house owned by Frederick and Thomas Dupree (the owners) seeks, in an action at law, to recover from the general contractor (Baltimore) for amounts due under the subcontract and for extras and, by a bill in equity, to reach and apply a bond given by The Aetna Casualty and Surety Company (Aetna). The law action and the bill in equity were consolidated for trial and, after

trial, the trial judge ordered that they be "fused into a single proceeding," i.e. the bill in equity.

The trial judge made somewhat summary findings which he later adopted as a report of material facts. Baltimore and Aetna appealed from the order of fusion and from what appears to be only an order including a form of final decree (a) awarding Wolfe $39,576.23 plus interest and costs, and (b) stating that, if Baltimore does not pay Wolfe in full, then Wolfe may resort to Aetna's bond for payment. The evidence is reported. The parties have treated the order as embodying a final decree. We do so also, although appropriately a final decree should have been prepared by counsel and entered on the docket by the clerk. Rule 82 of the Superior Court (1954). See *Bressler* v. *Averbuck*, 322 Mass. 139, 143; *Nantucket Express Lines, Inc.* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 350 Mass. 173, 174.

The action at law was commenced in the Superior Court for Suffolk County against Baltimore by writ dated December 6, 1965. It sought recovery of $39,576.23 alleged to be due under the subcontract. Baltimore's answer included (in addition to a general denial) an allegation of breaches of the subcontract by Wolfe, references to certain terms of the subcontract (see fn. 7 and related text of this opinion), and averments that the owners had not made final payment to Baltimore and that a dispute had arisen between Baltimore and the owners concerning Wolfe's work.

On February 13, 1967, Wolfe, in the action at law, by special precept purported to attach funds to the value of $44,000 owed to Baltimore by the owners both of whom were alleged to be of Cambridge (which is in Middlesex County). Baltimore filed a motion to dismiss the special precept on the ground that neither owner, served as trustee, dwelt or had a place of business in Suffolk County. See G. L. c. 246, § 2; *Daniels* v. *Clarke*, 193 Mass. 84, 85.[2]

On April 14, 1967, Wolfe filed against Baltimore and

---

[2] Baltimore states that the motion to dismiss was marked for hearing but was allowed to go off the list when Wolfe filed its bill to reach and apply. The motion to dismiss has not been decided.

Aetna [3] a bill to reach and apply certain assets of Baltimore. The bill also sought to have determined the amount, with interest, owed by Baltimore to Wolfe. It was alleged (a) that Wolfe had performed its work under its subcontract with Baltimore; (b) that Baltimore and the owners had submitted all disputes to arbitration, with the consequence that an award in favor of Baltimore had been paid in full; and (c) that, in order to obtain full payment of the award, Baltimore, with Aetna as surety, had furnished to the owners a bond in the penal sum of $44,000 naming Wolfe as obligee and guaranteeing "the payment of any judgment in favor of Wolfe against Baltimore." The defendants were enjoined from cancelling or dealing with the bond. The owners were ordered to deliver the bond to the court. This was done.

The bond, entitled "Bond to Dissolve Trustee Attachment," bears the file number of the equity suit. It recites the service of the special precept and that Baltimore, by giving bond, desires to "dissolve . . . [the] trustee attachment."[4]

The trial judge found (a) that Wolfe had "fully . . . performed all . . . services and furnished all . . . labor and materials . . . [under] its subcontract" and that Baltimore owes Wolfe $9,348.70 on the subcontract; (b) that for change orders and extras, Baltimore owes Wolfe $30,227.53; (c) that Wolfe had paid the owners $500 and received a release from them on account of "minor and unintentional deviations" in Wolfe's performance; (d) that Wolfe is entitled to interest on the sums and from the dates listed in the margin;[5] and (e) that Aetna, on March 17, 1967,

---

[3] The bill also named as defendants certain other persons alleged to have owed sums to Baltimore. Against these defendants the bill was dismissed.

[4] The bond states as the condition, "that if . . . Baltimore . . . shall, within thirty days after final judgment in . . . [the] action [at law], pay to the party claiming the same . . . $44,000 . . . or so much of said sum as may be necessary to satisfy any amount for which said attachment may be found to be subject, then this obligation shall be void, otherwise it shall be . . . in full force."

[5] The interest computation was based on the following findings, viz. Wolfe was entitled to receive with interest (a) on monthly requisitions, a balance of $18,353.48 due under the subcontract on October 26, 1965; (b) on account of ten per cent retention, $17,751.75, due on January 24, 1966; and (c) on work in which there was a dispute between Baltimore and the owners, $3,471, due on November 18, 1966.

executed the $44,000 bond. The judge ruled that the bond required Aetna to pay to Wolfe any judgment against Baltimore (to the amount of the bond) if Baltimore fails to do so.

Baltimore and Aetna defend on two principal grounds: (a) that the evidence does not justify the finding that Baltimore was under liability to Wolfe, because (in effect) Wolfe did not produce evidence that the owners ever paid Baltimore amounts due to Baltimore for the several classes of work [6] done by Wolfe; and (b) that despite the fusion of the law action with the equity proceeding, the judge erred in concluding that Wolfe may resort to Aetna's bond.

1. Article II (a) of the subcontract provides that payment will be made on monthly requisitions for progress payments "within 10 days after . . . [the owners'] payment of such monthly progress payments . . . [has] been received by" Baltimore.[7] Baltimore contends that its receipt of these payments from the owners is a condition precedent to any payment to Wolfe (of amounts requisitioned) and that Wolfe in order to recover must establish that Baltimore has been paid.

We interpret art. II (a) merely as setting the time of payment and not as creating a condition precedent to payment. In the absence of a clear provision that payment to the subcontractor is to be directly contingent upon the receipt by

---

[6] Four principal types of payment are involved in Wolfe's claims (see fn. 5), as follows: (a) unpaid monthly progress payments; (b) the final payment (from retained funds) due for undisputed work; (c) the final payment due to Wolfe on disputed work; and (d) the amount owed for extra work, which the trial judge, in most respects, dealt with in connection with his discussion of amounts due under the subcontract itself.

[7] Under art. II (a) payments were to be made (emphasis supplied) "[u]pon presentation by . . . [Wolfe] to . . . [Baltimore] of monthly requisitions . . . and, upon approval of such requisitions by . . . [Baltimore] and . . . [the owners] *and within 10 days after . . . [the owners'] payment* of such monthly progress payments . . . [has] been received by . . . [Baltimore]. Such progress payments will be made to . . . [Wolfe] of eighty-five per cent . . . of the approved amount of the requisition; any dispute regarding the approved amount of the requisition to be resolved by . . . [the owners]. The balance of the contract price shall be paid . . . within thirty . . . days after full and final payment for the work by . . . [the owners] to . . . [Baltimore]. . . . [Baltimore] shall be free to make payments to . . . [Wolfe] on account of the subcontract price, in such additional amounts and at such other times as . . . [Baltimore] may elect . . . ."

the general contractor of payment from the owner, such a provision should be viewed only as postponing payment by the general contractor for a reasonable time after requisition (and completion of the subcontractor's work mentioned in the requisition) so as to afford the general contractor an opportunity to obtain funds from the owner. See *Thos. J. Dyer Co.* v. *Bishop Intl. Eng. Co.* 303 F. 2d 655, 659–661 (6th Cir.); *Byler* v. *Great Am. Ins. Co.* 395 F. 2d 273, 276–277 (10th Cir.). See also *Trinity Universal Ins. Co.* v. *Smithwick*, 222 F. 2d 16, 22–23 (8th Cir.) cert. den. 350 U. S. 837; *Dancy* v. *William J. Howard, Inc.* 297 F. 2d 686, 688–689 (7th Cir.); *Darrell T. Stuart Contractor of Ariz.* v. *J. A. Bridges & Rust-Proofing, Inc.* 2 Ariz. App. 63, 65; *Mignot* v. *Parkhill*, 237 Ore. 450, 457–461.[8]  Cf. *Mascioni* v. *I. B. Miller, Inc.* 261 N. Y. 1, 4–6 (parol evidence received to explain intention of parties as imposing a condition and not merely setting time for payment); *Nassau Suffolk Lumber & Supply Corp.* v. *Bruce*, 177 Misc. (N. Y.) 825, 828 (County Court), mod. 265 App. Div. (N. Y.) 879.

Although no Massachusetts case directly controls the present situation, our decisions, in somewhat comparable situations, generally support our interpretation. See *E. Van Noorden Co.* v. *Hartford Roofing & Sheet Metal Co. Inc.* 336 Mass. 676, 678, citing *Alvord* v. *Cook*, 174 Mass. 120, 124–125, *Rosenthal* v. *Schwartz*, 214 Mass. 371, 373, and *Canton* v. *Thomas*, 264 Mass. 457, 459, three cases dealing with the date when a brokerage commission is due under an agreement that commission will be payable when "papers are

---

[8] Other authorities dealing with somewhat comparable problems are consistent.  See *Nunez* v. *Dautel*, 19 Wall. 560, 562–563; *North Am. Graphite Corp.* v. *Allan*, 184 F. 2d 387, 390–391 (Ct. App. D. C.); *Nikolaus* v. *Howe*, 122 Cal. App. 2d 422, 426; *Harkinson* v. *Dry Placer Amalgamating Co.* 6 Col. 269, 272–274; *Sanford* v. *Luce*, 245 Iowa, 74, 77–80; *Mock* v. *Trustees of First Baptist Church*, 252 Ky. 243, 248–249; *Kaeser* v. *Starksboro*, 116 Vt. 251, 255–256; Corbin, Contracts §§ 636, 729 (pp. 411–413), 733, 1362 (pp. 507–509).  Cf. *Hood* v. *Gordy Homes, Inc.* 267 F. 2d 882, 885–886 (4th Cir. payment out of particular fund); *Rumsey* v. *Livers*, 112 Md. 546, 552–553 (interpreting a more specific payment provision somewhat strictly, but see *Eastern Heavy Constructors, Inc.* v. *Fox*, 231 Md. 15, 19–20, and *Fishman Constr. Co. Inc.* v. *Hansen*, 238 Md. 418, 423); *Vance* v. *Mutual Gold Corp.* 6 Wash. 2d 466, 477–483 (but see *Noord* v. *Downs*, 51 Wash. 2d 611, 614–615).  Cf. also *Blair* v. *United States*, 147 F. 2d 840, 844 (8th Cir.), mod. 150 F. 2d 676, 678–679.

passed" or the agreement "is carried into effect." See also *C. J. Hogan, Inc.* v. *Atlantic Corp.* 332 Mass. 322, 328–329. In the *Canton* case, 264 Mass. at 459, it was stated that a "condition of the payment . . . would be expressed if the words 'if and when papers are passed' had been used . . . in place of the words 'when papers are passed.'" Cf. *Smith* v. *Graham Refrigeration Prod. Co. Inc.* 333 Mass. 181, 184–186 (express condition that payment not to take place until defendant's financial condition warrants).

The trial judge (see fn. 5) found that Wolfe was entitled to $18,353.48, the balance due on monthly requisitions, on October 26, 1965, the date when Wolfe demanded final payment. There was evidence of monthly requisitions (including requisitions for extra work) in June, July, and August, 1965, still remaining unpaid, in an amount in excess of $18,353.48. The principal (if not the only) definitive statement of a claim by the owners that any of Wolfe's work was not properly done appeared in a letter from Baltimore to Wolfe dated February 25, 1966. This letter referred to Baltimore's disputes with the owners (and the pending arbitration of them) apparently as delaying release of final payments. Disputes involving Wolfe's work represented only a minor portion [9] of what remained payable by Baltimore to Wolfe for work done by Wolfe. We cannot say that the trial judge improperly treated the date of the demand for final payment as a reasonable time for making the progress payments when no complaints of deficiencies in Wolfe's work had theretofore been received from the owners. Also far more than adequate amounts were being retained by Baltimore or the owners to meet all reasonably to be anticipated deficiencies in Wolfe's work.

2. The trial judge found that $17,751.75 was due on January 24, 1966 (ninety days after Wolfe's demand for

---

[9] The letter listed five claims by the owners (nos. 31, 64, 67, 68, 73) of a total amount of $3,471 for alleged deficiencies involving work by Wolfe. All of these (except no. 68 for $300) were released by the owners by releases dated October 18, 1966, running both to Wolfe and to Baltimore. For claim no. 68 the owners released Wolfe. These releases were given in consideration of a payment of $500 by Wolfe to the owners, as the trial judge found.

final payment on October 26, 1965), as a final payment for that part of Wolfe's work concerning which there was no dispute between Baltimore and the owners. A rider [10] [ to art. II (a) of the contract provided that if final payment to Baltimore is withheld because of a dispute between Baltimore and the owners "which in no way involves . . . [Wolfe's] work . . . then the balance . . . shall be paid . . . within 90 days after demand." Wolfe's final payment was to be $21,222.75, equal to ten per cent of $212,227.53 (the subcontract price of $182,000 plus extras of $30,227.53). From this the trial judge deducted $3,471, involved in the dispute (fn. 9), and treated the balance of $17,751.75 as due ninety days after Wolfe's demand of October 26, 1965, for final payment.

This was a reasonable application of what appears to be the intention of the rider provision. The provision clearly avoids the unfair result of having final payment to Wolfe delayed by any dispute between Baltimore and the owners not involving Wolfe's work. It does not expressly cover, however, a situation like that before us, where $21,222.75 is owed to Wolfe of which only $3,471 is in dispute. In the absence of explicit language requiring us to do so, we do not interpret the provision as calling for unnecessary withholding of funds, which a subcontractor fairly has earned, merely because a minor portion of its work is the subject of a dispute (even if the matter is not de minimis as in *Chas. T. Main, Inc.* v. *Massachusetts Turnpike Authy.* 347 Mass. 154, 166–167). The rider provision does not preclude directing payment to Wolfe, within a reasonable time after demand, of that part of the retained funds not in dispute. The judge justifiably concluded that ninety days after demand was a reasonable time.

3. The trial judge found the amount in dispute ($3,471, fn. 9) was not payable until November 18, 1966, thirty days following the owners' release of the five claim items. This

---

[10] The rider provided, among other things, that progress payments were to be ninety per cent instead of eighty-five per cent.
]

was more than ninety days after Wolfe's demand for final payment of October 26, 1965, and was also a reasonable time after the release.

4. Baltimore gave Wolfe written orders for extra work. Some contained stated prices. Others called for payment on a time and materials basis, essentially a fixed price. See *James B. Rendle Co.* v. *Conley & Daggett, Inc.* 313 Mass. 712, 714. Baltimore somewhat obscurely contends that, under the subcontract, Wolfe cannot recover for extras because (a) some of them were the subject of dispute and arbitration between Baltimore and the owners, and (b) Wolfe has not shown that Baltimore has received payment from the owners for these extras.

Baltimore's contention appears to rest on art. III of the subcontract, pertinent portions of which are set out in the margin.[11] Because Baltimore's written purchase orders for extra work named either a fixed price or a time and materials basis, we are of opinion that art. III has no application to the work under these purchase orders. The orders constitute a method by which Baltimore and Wolfe did "otherwise agree in writing" and are binding on Baltimore. The later portions of art. III, we think, apply only where there is no written agreement both as to the work to be done and the price and where, to protect both the general contractor and the subcontractor, a claim in writing must be made promptly by the subcontractor and prosecuted to a

---

[11] " . . . [Baltimore] may at any time . . . require any changes in the work (including extras . . .) . . . but no change shall be made by . . . [Wolfe] except upon the written order and receipt of a duly authorized [c]hange [o]rder from . . . [Baltimore]. . . . *Unless the parties otherwise agree in writing,* these requisite allowances shall be made in the subcontract prices as follows: (a) [a]ny applicable unit prices . . . shall govern without limitation; (b) [*i*]*f there are no applicable unit prices the sum to be paid for extras shall be no more basically than the actual amount received* . . . for such extra by . . . [Baltimore] from . . . [the owners]. . . . In no event shall . . . [Wolfe] be entitled to receive any additional compensation for making any change or extras unless . . . [it] shall *make claim therefor in writing* within forty-eight . . . hours after . . . [it] receives the written order to make such change from . . . [Baltimore]. . . . [Wolfe] *shall not in any instance have any greater right against* . . . [Baltimore] *for extra work* . . . *than* . . . [Baltimore] *shall have against* . . . [*the owners*]. . . . If the parties hereto fail to agree on value of additions . . . [Wolfe] shall . . . proceed diligently with the work as changed leaving prices for future determination under the contract documents" (emphasis supplied).

decision. Cf. *Chiappisi* v. *Granger Contracting Co. Inc.* 352 Mass. 174, 177–178.

5. The defendants further contend that there were submitted to arbitration two claims (X135 and X138) involving amounts for extra work done by Wolfe in addition to the five items mentioned by Baltimore in its letter (fn. 9) to Wolfe of February 25, 1966. In what appears to have been an effort to show that these two claims were the subject of arbitration, Baltimore offered in evidence, and the trial judge excluded, a copy of the arbitration award. Evidence concerning the award did not show with any clarity that Wolfe's work was involved in the two disputed items, a circumstance which (in view of what has been said in part 4 of this opinion) was not relevant in any event. The award itself reflects Wolfe's settlement of the five items mentioned in the letter of February 25, 1966 (fn. 9), but does not discuss the two additional items (X135 and X138) in detail or show that Wolfe's work was involved in the dispute about them. Wolfe was not a party to the arbitration. In the circumstances, the trial judge in his discretion properly excluded the award.

6. Baltimore and Aetna (apart from the issue whether Wolfe may proceed against Aetna's bond) show no prejudice arising from the order by which the law action and the equity proceeding, consolidated before trial, were (in the judge's order for a decree) "fused into a single proceeding." See *Lumiansky* v. *Tessier*, 213 Mass. 182, 189. Cf. *Miller* v. *Norton*, 353 Mass. 395, 398. The law action, which was commenced on December 6, 1965, although it sought recovery of the whole amount due from Baltimore to Wolfe, was not premature, for (as the trial judge found, fn. 5), the sum of $18,353.48 became due on October 26, 1965. See *Phelps* v. *Shawprint, Inc.* 328 Mass. 352, 358. The action could properly be merged in the later bill in equity growing out of the same cause of action and the same events. It might have been more appropriate to have fused the cases before trial. Nevertheless, no harm to the defendants from the delay appears. It was necessary for them to present essentially the same defences to the two cases when merely

consolidated as when completely fused. In the equity suit, even before the cases were fused, complete relief could have been granted in any event. See *Atlantic Natl. Bank* v. *Hupp Motor Car Corp.* 300 Mass. 196, 202–203; *Cochrane* v. *Janigan*, 344 Mass. 296, 302.

The defendants, however, assert that the fusion caused prejudice with respect to the bond, originally prepared to dissolve the purported attachment pursuant to the special precept. The special precept was improper because the law action was in Suffolk County and the persons named in the precept as trustees had no residence or place of business there. This was a matter of venue as to which a motion to dismiss the special precept lay. *Brown* v. *Webber*, 6 Cush. 560, 563–565. Such a motion was filed but not fully prosecuted (fn. 2). If the bond to dissolve the attachment had been filed in the law action, the attachment would have been dissolved (see *Webb* v. *Cohen*, 280 Mass. 292, 294) and the bond would have taken its place without any adjudication that the attachment was invalid. Wolfe might then have had at least plausible basis for contending that the bond was enforceable without regard to whether the attachment was voidable (see *Leffler* v. *Todd*, 316 Mass. 227, 233), for the recovery allowed to Wolfe (a) was for the same cause of action for which the law action was brought; (b) was properly determined in the equity proceeding, see G. L. c. 214, § 3 (7); and (c) was within the penal sum of the bond. Unlike the bond considered in *Merriman* v. *Currier*, 191 Mass. 133, 140–141, this bond does not expressly leave open the question of the validity of the attachment.

Wolfe does not show, however, that the bond was ever filed in the law action to dissolve the attachment, or that it ever was delivered to Wolfe. It was apparently brought into court in the equity proceeding only as the result of an interlocutory decree, "restraining Baltimore . . . from cancelling . . . [the] bond other than by order of [c]ourt." This filing of the bond did not seem to be a compliance with the provisions of G. L. (Ter. Ed.) c. 223, §§ 120, 123. In *Smith* v. *Meegan*, 122 Mass. 6, 7, the bond there held en-

forceable, although not filed with the court, had been delivered to the attaching creditors. Here Wolfe apparently obtained the bond from the owners only by the decree. Although Wolfe alleged in its bill that Baltimore had furnished the bond to the owners "in order to obtain full payment of the arbitrator's award," this was denied by Baltimore. The record does not enable us to say that the bond was ever so delivered to Wolfe or so deposited in court as to give Wolfe enforceable rights under it.

It may be that the bond will prove to be wholly unimportant. At the arguments counsel indicated that this was likely. Accordingly, at this stage of the proceedings, we do not decide, upon an inadequate record, the issues concerning the bond.

7. Other points are not sufficiently argued in the briefs to require discussion.

8. The final decree is to be modified by striking out paragraph 2 and inserting in place thereof: "2. In the event that the defendant Baltimore Contractors, Inc. does not pay the amounts mentioned in paragraph 1 of this decree to the plaintiff within thirty days after entry of a final decree (or a final decree after rescript from the Supreme Judicial Court) then the plaintiff may apply [in the Superior Court] for reopening of the hearings concerning the bond executed by The Aetna Casualty and Surety Company and the circumstances in which it was given and delivered. If, however, Baltimore Contractors, Inc. within thirty days after such decree shall pay the indebtedness mentioned in paragraph 1, the bill shall be dismissed as against The Aetna Casualty and Surety Company." As so modified the final decree is affirmed. Wolfe is to have costs of appeal.

*So ordered.*