[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
Before the court is the plaintiff's motion for summary judgment as to counts one and three of its complaint, the defendants' opposition to the motion and the plaintiff's motion to strike portions of the affidavit the defendants submitted in support of their opposition.
 PROCEDURAL HISTORY
This action arises out of a construction project for the renovation of the Central Connecticut Coast YMCA, which is owned by State Street Bridgeport Limited Partnership (State Street). The defendants are the general contractor for the project, HRH/Atlas Construction, Inc., and its surety, Liberty Mutual Insurance Co. The plaintiff is R L Acoustics, a subcontractor on the project.
On January 25, 2001, the plaintiff filed a three count complaint against the defendants. The complaint is premised on the plaintiff's contention that it has not been paid in full for the work it performed on the project. In the first count, the plaintiff asserts a claim on "common law bond" against HRH/Atlas. In the second count, the plaintiff asserts a claim on statutory bond pursuant to General Statutes § 49-41 (Little Miller Act) against Liberty Mutual.[1] In the third count, the plaintiff alleges a claim of breach of the covenant of good faith and fair dealing against Liberty Mutual based on the manner in which it handled the plaintiff's claim. In the first and third counts, the plaintiff also alleges that the defendants wrongfully detained the money that was due and payable to the plaintiff and the defendants are therefore liable for statutory interest on the plaintiff's damages pursuant to General Statutes § 37-3a. On April 10, 2001, the defendants filed an answer in which they admitted specific paragraphs of the complaint and denied others.
On April 23, 2001, the plaintiff filed a motion for summary judgment on the first and third counts of the complaint. The plaintiff filed a memorandum, the affidavit of its president, Richard Gillette, and several documents in support of its motion. The plaintiff asserts that it is entitled to summary judgment on these counts because the admissions contained in the defendants' answer, the facts as stated in Gillette's affidavit, and the documents submitted by the plaintiff show that there is no genuine issue of material fact that the defendants owe the plaintiff the unpaid balance for the work it performed and that the plaintiff is entitled to an award of interest thereon. The defendants filed a memorandum in opposition to the motion and the affidavit of Brad Singer, president of HRH/Atlas. The defendants contend that the plaintiff's motion should be denied pursuant to the pay when paid" provision of the subcontract. In reply, the plaintiff filed a motion to strike two paragraphs of Singer's affidavit on the ground that the CT Page 13163 statements therein contain inadmissible hearsay and are irrelevant. The plaintiff also filed a memorandum in support of its motion to strike, an additional memorandum regarding the pay when paid provision of the subcontract, another affidavit from Gillette and a copy of the subcontract.
 UNDISPUTED FACTS
In their answer to the plaintiff's complaint, the defendants admitted paragraphs one, two, three, six and seven of the first count of the plaintiff's complaint, paragraph seven of the second count, and paragraph nine of the third count.[2] Accordingly, the plaintiff does not have to prove the facts stated in the above-referenced paragraphs.[3] In addition, the affidavits of Richard Gillette establish the remaining material allegations of counts one and three.[4] The defendants do not offer evidence that raises a material issue of fact as to any of these allegations. Thus the following facts are undisputed: HRH/Atlas and State Street entered into construction contract (contract) for the renovation of the YMCA; HRH/Atlas and Liberty Mutual, as contractor and surety respectively, entered into a payment bond pertaining to the contract pursuant to which they bound themselves to State Street and to claimants with a direct contract with HRH/Atlas to pay for labor, material and equipment used in the performance on the contract; on June 1, 1998, the plaintiff and HRH/Atlas entered into a subcontractor agreement (subcontract) related to the contract pursuant to which the plaintiff was to supply labor and materials for the construction of improvements for the agreed price of $548,200; between March 23, 1998, and June 30, 2000, the plaintiff fully performed its obligations pursuant to the subcontract; the plaintiff performed additional work pursuant to change orders agreed to by the parties; the total price for the change orders was $78,508.05; on July 25, 2000, pursuant to the subcontract, the plaintiff applied to HRH/Atlas for payment of $626,708.05 ($584,200 plus $78,508.05); as of August 1, 2000 HRH/Atlas paid the plaintiff $533,828.48, leaving a balance due of $92,879.57; on August 8, 2000, the plaintiff served a notice of claim on Liberty Mutual and sent copies thereof to HRH/Atlas and State Street; at Liberty Mutual's request, the plaintiff submitted a proof of claim to Liberty Mutual; the bond contains a provision that provides that within forty five days of its receipt of a claim, the surety is required to respond by sending the claimant an answer stating amounts that are undisputed amounts and stating the basis of its challenge of disputed amounts and promptly paying, or arranging to pay, the undisputed amounts; Liberty Mutual did not send the plaintiff an answer or pay or arrange to pay undisputed amounts; the plaintiff is a claimant pursuant to the payment bond and complied with the notice provision thereof; neither defendant has paid the plaintiff the balance of $92,879.57. CT Page 13164
 DISCUSSION Motion to Strike Affidavit
The first issue is whether paragraphs ten and twelve of Singer's affidavit should be stricken on the ground that they contain statements that are hearsay or irrelevant. As the parties opposing summary judgment, the defendants must demonstrate "the existence of the genuine issue of material fact . . . by counteraffidavits and concrete evidence."2830 Whitney Avenue Corp. v. Heritage Canal Development Associates,Inc., 33 Conn. App. 563, 568-69, 636 A.2d 1377 (1994). Pursuant to Practice Book § 17-46, which governs affidavits filed in summary judgment proceedings, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . ." Accordingly, "[h]earsay statements are insufficient to contradict facts offered by the moving party . . . and if an affidavit contains inadmissible evidence it will be disregarded." 2830 Whitney Avenue Corp. v. Heritage Canal DevelopmentAssociates, Inc., supra, 33 Conn. App. 568-69. "A motion to strike is the proper method to attack a counteraffidavit that does not comply with the rules." Id., 569 n. 3.
In paragraph ten, Singer, the president of HRH/Atlas, states: "The Owner [State Street] has determined that many of the items that are incorporated in R L's claim were part of the contractual scope of work and therefore were denied." In paragraph twelve, Singer states: "The Owner has notified HRH that the work included in R L's contractual scope of work remains incomplete and therefore [it] is withholding funds from HRH." "Hearsay is defined as a statement made out-of-court that is offered to establish the truth of the facts contained in the statement." (Internal quotation marks omitted.) Federal Deposit Ins. Corp. v.Keating, 44 Conn. App. 556, 559, 690 A.2d 429 (1997). Singer's statements in both paragraphs ten and twelve pertain to information that was relayed to him by a third party and presumably are offered for the truth of the matters stated therein. Therefore, both paragraphs contain inadmissible hearsay and the court grants the plaintiff's motion to strike these paragraphs from Singer's affidavit and will disregard them in deciding the plaintiff's motion for summary judgment.
 Motion for Summary Judgment
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and CT Page 13165 that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Community Action for GreaterMiddlesex County, Inc. v. American Alliance Ins. Co. 254 Conn. 387,397-98, 757 A.2d 1074 (2000).
Instead of disputing the plaintiff's allegations and evidence regarding the issue of payment, the defendants instead rely on their contention that the subcontract contains provisions that provide that HRH/Atlas is not obligated to pay the plaintiff for the regular or extra work it performed on the project until State Street pays HRH/Atlas. In his affidavit, Singer avers that State Street failed to make a final payment to HRH/Atlas and that the plaintiff's entire claim is part of this amount. Singer also avers that the bond provides that Liberty Mutual is only obligated to pay the plaintiff for sums that are due to the plaintiff and that have not been paid by HRH/Atlas. The defendants contend that the plaintiff's claim is not "due" until State Street makes its final payment to HRH/Atlas. Thus, the defendants argue that pursuant to these provisions, HRH/Atlas' receipt of the final payment from State Street is a condition precedent to the defendants' obligation to pay the plaintiff and that because this condition has not occurred, they have no obligation to pay the plaintiff. As to this issue, the plaintiff contends that the pay as paid clause is not enforceable as a condition precedent to payment and should be interpreted as requiring HRH/Atlas to pay the plaintiff within a reasonable time.
 First Count — Liability of HRH/Atlas
In contract law, "[a] condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence." Funaro v. Baisley,57 Conn. App. 636, 640, 749 A.2d 1205, cert. denied, 254 Conn. 902,755 A.2d 218 (2000).
Article 10 of the subcontract is entitled "Payments." Section 10.1(b) provides: "The final payment shall be made by the Contractor to the Subcontractor as follows: After the Work under this Subcontract has been CT Page 13166 completely performed all as-built drawings have been submitted by the Subcontractor and accepted by the Contractor, the Subcontractor shall notify the Contractor, the Owner and the Architect thereof. Thereafter and within sixty (60) days after the Contractor, the Owner and the Architect shall have approved all Work done by the Subcontractor and if the Contractor, the Owner and the Architect are satisfied that this Subcontract has been completely performed, the Contractor . . . upon receipt from the Owner of the funds necessary to make payment of the balance owing, shall pay the balance owing to the Subcontractor. . . ." Section 10.1(f) provides: "The Contractor shall have no liability or responsibility for any amount due or claimed to be due to Subcontractor except to the extent Contractor actually receives funds from Owner specifically designated for disbursement to the Subcontractor as receipt of such funds from the Owner are specifically made a condition precedent to the Contractor's obligation to make payments to Subcontractor hereunder." "In the construction industry [these provisions are] commonly referred to as . . . "pay-when-paid' clause[s]." Blakeslee Arpaia Chapman,Inc. v. El Constructors, Inc., 239 Conn. 708, 718, 687 A.2d 506 (1997).
In Blakeslee Arpaia Chapman, Inc. v. El Constructors, Inc., supra,239 Conn. 718-19, the court categorized the arguments advanced for not enforcing such provisions as conditions precedent to payment as follows: "(1) a `pay-when-paid' clause, which transfers the credit risk incurred by the general contractor, can only be enforced if the language in the subcontract is clear and unequivical . . . see Statesville Roofing Heating Co. v. Duncan, 702 F. Sup. 118, 121 (W.D.N.C.) 1988 . . . (2) such a clause does not relieve contractors of their duty to pay the subcontractor because it conflicts with the contract read in its entirety or the intent of the parties; see Statesville Roofing Heating Co. v.Duncan, supra, 119 . . . (3) `pay-when-paid' clauses are not enforceable when the conduct of the contractor is the cause of the failure; seeMidland Engineering Co. v. John A. Hall Construction Co., 398 F. Sup. 981,995 (N.D.Ind. 1975; Star Contracting Corp. v. Manway Construction Co.,32 Conn. Sup. 64, 68, 337 A.2d 669 (1973);[5] (4) such a clause merely sets the time for payment and `should be viewed only as postponing payment by the general contractor for a reasonable time after requisition . . . so as to afford the general contractor an opportunity to obtain funds from the owner;' A.J. Wolfe Co. v. Baltimore Contractors, Inc.,355 Mass. 361, 366, 244 N.E.2d 717 (Mass. 1969); and (5) that a `pay-when-paid clause is a condition precedent that is contrary to public policy and therefore unenforceable. United States ex rel. T.M.S.Mechanical Contractors, Inc. v. Millers Mutual Fire Ins. Co., 942 F.2d 946,949 n. 6 (5th Cir. 1991) . . . Statesville Roofing Heating Co. v.Duncan, supra, 702 F. Sup. 119 ("the trend now in most states is that, absent special circumstances, a [pay-when-paid clause] is given no weight'); Gulf Construction Co. v. Self, [676 S.W.2d 624, 627 (Tex.App. CT Page 13167 1984)] ("it is a rule of construction that a forfeiture, by finding a condition precedent, is to be avoided when possible under another reasonable reading of the contract')."[6]
Connecticut courts have adopted a variation of these arguments. SeeDeCarlo Doll, Inc. v. Dilozir, 45 Conn. App. 633, 642-43, 698 A.2d 318
(1997); Connecticut Carpentry Corp. v. Maranba Builders, Inc., Superior Court, judicial District of Hartford at Hartford, Docket No. 573579 (June 8, 1999, Allan, J.). In Decarlo Doll, Inc. v. Dilozir, supra,45 Conn. App. 642-43, the court explained that "[w]here a debt has arisen, liability will not be excused because, without fault of the creditor and due to happenings beyond his control, the time for payment, as fixed by the contract, can never arrive . . . [Such cases], like virtually every case involving from an obligation to perform, concerns the issue of which party bears the loss resulting from an event that renders performance by one party uneconomical. . . . Determining whether the non-occurrence of a particular event was or was not a basic assumption involves a judgment as to which party assumed the risk of its occurrence. . . . In making such determinations, a court will look at all circumstances, including the terms of the contract." (Citations omitted; internal quotation marks omitted.) The payment provision at issue in that case provided: "`Subject to payment with all outstanding payments to be paid in full at time of financing of project.'" Id., 645. The plaintiff therein completed its work on the project but the defendant refused to pay the plaintiff in full on the ground that the defendant had not obtained financing for the project and so he had no obligation to pay the plaintiff. The court concluded that the provision at issue "was not a condition on which payment was contingent. This clause set forth the time, which was in the sole control of the defendant, when payment was to be made by the defendant." Id., 641. "Because financing was never obtained by the defendant, the time of payment should have been within a reasonable time. When the terms of a contract's time of performance are indefinite, Corbin states: `The result generally reached is that the time is neither unlimited nor discretionary. Acceptance must be within a "reasonable time" and the promised performance must be rendered within a "reasonable time."' 1A Corbin, Contracts (Rev. Ed. 1993) § 4.2, p. 549. In addition, we also look to the Uniform Commercial Code (UCC) by analogy concerning a date of payment issue. We look to General Statutes42a-2-309 (1), which provides: `the time for shipment or delivery or any other action under a contract if not provided in this article or agreed upon shall be a reasonable time.' This section of the UCC by analogy supports the contention that when an act is in the control of an obligor, and the obligor fails to act, payment should take place within a reasonable time." Id., 643-44.
The facts of this case are distinct from those of DeCarlo Doll, Inc.CT Page 13168v. Dilozir because in this case, the pay-when-paid provisions explicitly state that HRH/Atlas' receipt of funds from State Street is a condition precedent to HRH/Atlas's obligation to pay the plaintiff and it still possible that the owner will pay HRH/Atlas. Nevertheless, the other terms of the subcontract do not indicate that the parties intended to absolve HRH/Atlas of its obligation to pay the plaintiff for the work it performed nor does the subcontract provide that the plaintiff must bear the risk of the owners' insolvency. Moreover, the defendants have not provided evidence that they have been unable to obtain final payment from State Street or that it is not within their power to do so.
"Where an instrument purports to be payable upon the happening of a certain event, the question which must precede any inquiry as to the time of payment, assuming the event has not happened, is whether the instrument imports an absolute liability. If the event is one that is certain to happen, the mere promise to pay may import such an absolute liability. If, however, the event is one wholly or partially within the promisor's control and therefore not certain to happen, the absolute character of the liability cannot be inferred from the mere promise, but must be sought in the other terms of the instrument or in extrinsic circumstances. . . . If the instrument, read in the light of the surrounding circumstances, shows that the debt is an absolute one, it is reasonable to suppose that the parties intended that a reasonable effort should be made to cause the event to happen within a reasonable time. Some courts declare broadly that where payment is to be made upon a condition under the control of the promisor, an action may be brought within a reasonable time." 17A Am.Jur.2d 510, Contracts § 495 (1991). "Even where courts have been most strict in enforcing conditions according to their exact terms, it has been held that where, a debt for the price of goods, property or services has arisen, liability will not be excused because the contract contained a condition regarding the time for payment of the price, which has, without fault of the seller, become impossible of performance." 14 S. Williston, Contracts (4th Ed. 2000) § 42:7, pp. 400-01.
"A leading case in this area is Thomas J. Dyer Co. v. BishopInternational Engineering Co., 303 F.2d 655 (6th Cir. 1962)." SouthernStates Masonry, Inc. v. J.A. Jones Construction Co., 507 So.2d 198, 204
(La. 1987) In Dyer, the court explained that its view of pay-when-paid provisions is based on the relationship between the parties. "It is, of course, basic in the construction business for the general contractor on a construction project of any magnitude to expect to be paid in full by the owner for the labor and materials he puts into the project. . . . That is a fundamental concept of doing business with another. The solvency of the owner is a credit risk necessarily incurred by the general contractor, but various legal and contractual provisions . . . CT Page 13169 are used to reduce this to a minimum. These evidence the intention of the parties that the contractor be paid even though the owner may ultimately become insolvent. This expectation and intention of being paid is even more pronounced in the case of a subcontractor whose contract is with the general contractor, not the owner. In addition to his mechanic's lien, he is primarily interested in the solvency of the general contractor with whom he has contracted. He looks to him for payment. Normally and legally, the insolvency of the owner will not defeat the claim of the subcontractor against the general contractor. Accordingly, in order to transfer this normal credit risk incurred by the general contractor to the subcontractor, the contract between the general contractor and subcontractor should contain an express condition clearly showing that to be the intention of the parties." Id., 661. In the case before the court, the provision at issue provided that the contractor would pay the subcontractor "ninety per cent (90%) of the value of the work completed and accepted each month for which payment has been made by said Owner to said Contractor . . . final payment will be made . . . immediately following final completion and acceptance of such materials and work by the Architect, and final payment received by said Contractor. . . ." Id., 656. The court noted, "the subcontract does not refer to the possible insolvency of the owner. On the other hand, it deals with the amount, time and method of payment, which are essential provisions in every construction contract, without regard to possible insolvency. In our opinion . . . the subcontract is a reasonable provision designed to postpone payment for a reasonable period of time after the work was completed, during which time the general contractor would be afforded the opportunity of procuring from the owner the funds necessary to pay the [sub]contractor." Id., 661. "The Dyer decision has been followed by many other courts faced with a similar dispute;" and represents the majority view.[7] Southern States Masonry, Inc. v. J.A. Jones Construction Co.,
supra, 507 So.2d 205.
The court finds this reasoning persuasive and determines that the pay-when-paid provision at issue here is not enforceable as a condition precedent to HRH/Atlas' obligation to pay the plaintiff. Instead, it operates to postpone HRH/Atlas' obligation to pay the plaintiff for a reasonable time after the plaintiff's requisition for payment in order to allow HRH/Atlas the opportunity to obtain funds from State Street.
The next issue is whether, as a matter of law, HRH/Atlas has already been provided with a reasonable time in which to pay the plaintiff. Aside from the provisions at issue, the subcontract does not specify a time for payment. "Where no time for the performance of a contract is contained within its terms, the law presumes that it is to be performed within a reasonable time. . . . What is a reasonable length of time is ordinarily a question of fact for the trier." (Internal quotation marks omitted.) CT Page 13170Schlicher v. Schwartz, 58 Conn. App. 80, 86, 752 A.2d 517 (2000). "What is reasonable is sometimes a question of law and at others a question of fact. When it depends upon an inference from peculiar, numerous or complicated circumstances it is usually a question of fact." (Internal quotation marks omitted.) Johnston Jewels, Ltd. v. Leonard, 156 Conn. 75,81, 239 A.2d 500 (1968). On the other hand, although in a different context, our Supreme Court also recognizes that "the question of what constitutes a reasonable time . . . where the facts are not in dispute, it is [a question] of law." Central New Haven Development Corp. v. LaCrepe, Inc., 177 Conn. 212, 216, 413 A.2d 840 (1979). Thus, if as in this case, the nonmovants do not dispute the essential facts relating to the plaintiff's performance, the date that performance was complete or the dates on which the plaintiff requested payment and do not claim that their delay in payment was reasonable, the court may decide the issue as a matter of law. B.C.S. Corp. v. Abbott, 9 Conn. Sup. 284, 286, ___ A.2d ___ (1941).
In this case, as previously noted, it is undisputed the plaintiff completed its work on the project by June 30, 2000 and applied to HRH/Atlas for final payment on July 25, 2000. As of August 1, 2000, the balance due and owed to the plaintiff was $92,879.57. On August 8, 2000, the plaintiff sent the defendants a notice of claim. The defendants failed to pay the plaintiff and, on January 25, 2001, six months after the plaintiff first applied for final payment, the plaintiff filed this action. Under these circumstances, HRH/Atlas' delay in paying the plaintiff is unreasonable as a matter of law.
Third Count — Liability of Liberty Mutual
In the third count of the complaint, the plaintiff asserts a cause of action against Liberty Mutual for breach of the covenant of good faith and fair dealing.[8] This count is premised on the plaintiff's allegations that Liberty Mutual acted in bad faith in failing to comply with the notice and payment provisions of the payment bond. The defendants contend that the pay-when-paid provisions also preclude summary judgment on this count because Liberty Mutual, as surety to HRH/Atlas, can avail itself of the defenses available to HRH/Atlas.
Although the court agrees that generally, a surety, by executing a bond, "acquires obligations which are coextensive with that of the principal;" Newman Partners, P.C. v. CFC Construction Ltd., Superior Court, judicial district of New Haven at New Haven, Docket No. 318137 (November 24, 1994, DeMayo, J.), affirmed, 236 Conn. 750, 674 A.2d 1313
(1996); in this case, the court has already determined that the pay-when-paid provision does not absolve HRH/Atlas of its liability to the plaintiff. Moreover, courts in other jurisdictions have rejected similar CT Page 13171 defenses by sureties when made in the context of construction contracts; see, e.g., Moore Brothers Co. v. Brown Root, Inc., 207 F.3d 717, 722
(4th Cir. 2000) (surety cannot invoke pay-when-paid provision of subcontract because surety did not expressly incorporate pay-when-paid provision into bond contract and because very purpose of surety bond is to insure claimants who perform work are paid in event that principal does not pay); United States ex rel. T.M.S. Mechanical Contractors, Inc. v.Millers Mutual Fire Ins. Co., supra, 942 F.2d 949 n. 6 (under Miller Act, liability of contractor is to subcontractor, despite non-payment by government to contractor) and Fanderlik-Locke Co. v. United States exrel. Morgan, 285 F.2d 939, 942 (10th Cir. 1960), cert. denied,365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823 (1961) (fact that prime contractor has claim for same amounts pending under prime contract does not affect Miller Act cases).
On the other hand, the third count is a cause of action for breach of the covenant of good faith and fair dealing, not a statutory claim based solely on Liberty Mutual's failure to comply with the terms of the bond. "The two principles that govern [this] claim are undisputed. Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. . . . [In addition], [b]ad faith means more than mere negligence; it involves a dishonest purpose." (Internal quotation marks omitted.) Gupta v. New Britain GeneralHosital, 239 Conn. 574, 598, 687 A.2d 111 (1996). In this case, the plaintiff does not offer any evidence that Liberty Mutual acted with a dishonest purpose in failing to pay the plaintiff's claim. Therefore, the plaintiff's motion for summary judgment is denied as to the third count.
Prejudgment Interest
In the first count, the plaintiff claims it is entitled to an award of prejudgment interest pursuant to General Statutes § 37-3a. Section 37-3a
provides, in pertinent part: "Except as provided in sections 37-3b, 37-3c
and 52-192a, interest at a rate often per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable. . . ." "Prejudgment interest pursuant to § 37-3a has been applied to breach of contract claims for liquidated damages, namely, where a party claims that a specified sum under the terms of a contract, or a sum to be determined by the terms of the contract, owed to that party has been detained by another party."Foley v. Huntington Co., 42 Conn. App. 712, 740, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996).
"The allowance of prejudgment interest as an element of damages is an equitable determination and a matter lying within the discretion of the CT Page 13172 trial court. . . . The determination of whether or not interest is to be recognized as a proper element of damages, is one to be made in view of the demands of justice rather than through the application of an arbitrary rule. . . . A trial court must make two determinations when awarding compensatory interest under § 37-3a: (1) whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date upon which the wrongful detention began in order to determine the time from which interest should be calculated." (Internal quotation marks omitted.) Blakeslee Arpaia Chapman, Inc. v. EIConstructors, Inc., supra, 239 Conn. 734-35. "In the context of §37-3a, wrongful means nothing more than that the act is performed without legal right to do so. Ballentine's Law Dictionary, 3rd Ed. 1989, p. 1382." Sarasota, Inc. v. Ralion Corp., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 322000, (February 10, 1998,Mottolese, J.) (21 Conn. L. Rptr. 382). Thus, "`wrongful' detention of money is not synonymous with `bad faith' conduct." Id. This court has already determined that HRH/Atlas wrongfully detained money that it owed to the plaintiff. Thus, the plaintiff is entitled to prejudgment interest under § 37-3a.
As to the date that HRH/Atlas began its wrongful detention of the money, detention of money can only be wrongful . . . from and after the date on which the court, in its discretion, determines that the money was due and payable." Northrop v. Allstate Ins. Co., 247 Conn. 242, 254,720 A.2d 879 (1998). The plaintiff submitted its application for final payment to HRH/Atlas on July 25, 2000, and sent HRH/Atlas its notice of claim on August 8, 2000. In its discretion, the court determines that HRH/Atlas' wrongful detention began forty five days later, on September 22, 2000.
 CONCLUSION
For the foregoing reasons, the court grants the plaintiff's motion for summary judgment as to count one of the complaint. HRH/Atlas is liable to the plaintiff for the balance of $92,879.57. In addition, the plaintiff is entitled to prejudgment interest on the balance at the rate often per cent a year from September 22, 2000 to the date of judgment.
Rush, J.