PEOPLES TRUST & SAVINGS BANK, Appellant, v. STANDARD PRINTING COMPANY, INC., Respondent.

*January 8—February 5, 1963.*

28

For the appellant there were briefs by *Berk & Pressentin* of Green Bay, and oral argument by *Bernard Berk* and *James Pressentin.*

For the respondent there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Arthur Kaftan.*

WILKIE, J.   There are several separate issues to be considered on this appeal.

1. Is there an issue of fact on the legal status of the plaintiff and its ability to sue Standard on the overdue Standard note to Libman?

2. In the action by the plaintiff on the Standard note, is Standard entitled to claim a credit or setoff of $3,984.10 as alleged damages suffered by Standard by reason of Libman's alleged fraud against Standard?

3. If the plaintiff is entitled to bring suit against Standard on the overdue Standard note to Libman, which note was in turn delivered and pledged by Libman to the plaintiff, is the plaintiff limited in its recovery to the amount of the principal debt between Libman and the plaintiff ($2,500 plus interest)?

On the pleadings and affidavits before the trial court we are of the opinion that for the reasons set forth below no issues of fact were presented and that the trial court should have granted summary judgment to the plaintiff on the terms indicated in this opinion. As properly stated by the trial court, the motion for summary judgment searches the record, and in arriving at its decision, the court, on the motion, could properly consider all of the allegations contained in the pleadings plus the various affidavits filed in relation to the motion. (See *Sullivan v. State* (1933), 213 Wis. 185, 251 N. W. 251.) The lower court cited two passages from *Hyland Hall & Co. v. Madison Gas & Electric Co.* (1960), 11 Wis. (2d) 238, 244, 105 N. W. (2d) 305:

"As has been said many times by this court, the inquiry on summary judgment is not to decide the questions of fact raised by the affidavits and other proof, but to decide whether such questions exist and should be submitted to the trier of the facts.

" 'We have often said that the power of the courts under the summary-judgment statute . . . should be exercised only when it is plain that there is no substantial issue of fact or of permissible inference from the undisputed facts to be tried.' "

Issue 1. *Is there an issue of fact on the legal status of the plaintiff and its ability to sue Standard on the overdue Standard note to Libman?* The trial court determined that summary judgment could not be granted to the plaintiff be-

cause there was a fact issue raised by the pleadings and not settled by the affidavits as to whether the plaintiff was a holder or owner of the Standard note. We must hold that there is no question of fact on this issue, and that plaintiff's legal status as to the note can be determined as a matter of law from the undisputed facts.

The trial court considered the detailed pleadings and affidavits and concluded:

"The denial that plaintiff is now or ever was the holder or owner of defendant's note is contained in the original answer, the amended answer, and the second amended answer. As to the plaintiff not being the holder or owner, the answers are not as definite and certain as they might be, but no motion has been made by plaintiff to make them more definite and certain. While the answers may not be as definite and certain in this regard as they might be, nevertheless, the question of whether the plaintiff is now or ever was the holder or owner of the note in question is sufficiently raised, and it is present."

The affidavits before the trial court did contain certain facts about plaintiff's legal status with respect to the Standard note. In substance, affiant, R. T. Bennie, chairman of the board of plaintiff corporation, stated that the plaintiff's loan to Libman was *secured* by the promissory note in question, which is *in the possession of the plaintiff under and pursuant to the pledge agreement* (which was also in evidence); B. Berk, attorney for plaintiff and Libman, swore that the note was *delivered* by Libman as *collateral security* for loan; R. M. Tetzlaff, president of plaintiff corporation, swore that he notified Standard that the plaintiff was the *holder* of defendant's note, and that he further directed collection of the note held by plaintiff as *collateral security;* Q. V. Reinke, cashier of plaintiff corporation, swore that Libman received a loan from plaintiff and to secure said loan Libman *delivered* the Standard note to plaintiff and simultaneously executed a

"pledge agreement" *under and pursuant to which the plaintiff took and held said defendant's note and still holds the same;* Libman stated that he *delivered* the note and executed the *pledge agreement pursuant to which the plaintiff holds said note of Standard.* In his affidavit Mr. Arthur Kaftan, attorney for Standard, sets forth his denial that the plaintiff is now or ever was the *owner* of Standard's note.

Under these facts, all parties concede that the plaintiff is not a "holder in due course" of the note. Neither is plaintiff a "holder," for sec. 116.01 (7) of the Wisconsin statutes, 1957, defines a holder as "the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." The note was not indorsed here and for that reason alone the plaintiff could not be a "holder." Under the undisputed facts showing (1) the Standard note to be in the possession of the plaintiff together with the related and duly executed pledge agreement, and (2) the advance of $2,500 by plaintiff to Libman in exchange for a note secured by the Standard note, the plaintiff was "a transferee for value," the "owner" of the note, such status as transferee being settled by sec. 116.54, Stats. 1957, which provides:

"TRANSFER WITHOUT INDORSEMENT; SUBSEQUENT IN-DORSEMENT. Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferer. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

Wisconsin cases recognizing the status of such transferee of an unindorsed note are *Implement Credit Corp. v. Elsinger* (1954), 268 Wis. 143, 153, 66 N. W. (2d) 657; *Bjelde v. Dolan* (1946), 248 Wis. 153, 157, 21 N. W. (2d) 258.

As the transferee of the note, the plaintiff possesses such title as the transferor, Libman, had, and acquired the right to maintain an action in plaintiff's own name on the note. Thus, the plaintiff did have the right to sue as such transferee and no fact issue was presented as to its status.

The trial court also determined there was an issue of fact to be tried on the amount of indebtedness owed by Libman to Standard to apply as a credit against the first instalment due on the Standard note. We will not consider this matter further on this appeal in view of our analyses of the second and third issues.

Issue 2. *In the action by the plaintiff on the Standard note, is Standard entitled to claim a credit or setoff of $3,984.10 as alleged damages suffered by Standard by reason of Libman's alleged fraud against Standard?* The plaintiff, as transferee of the Standard note from the transferor, Libman, on a suit to collect on the note is subject to defenses available to Standard as against Libman.[1] In its answer to the plaintiff's complaint, Standard alleges fraud on the part of Libman and claims a setoff of $3,984.10 as alleged damages due to the alleged fraud. In turn, Standard cross complains against Libman for these same damages in an action for fraud.

There is no dispute in the record that after the fraud was discovered, Standard did affirm its contract with Libman. It did not attempt to rescind. Both its defense against the plaintiff and its cross complaint against Libman are based on recovering damages for Libman's alleged fraud.

Counsel for Standard cite *Neas v. Siemens* (1960), 10 Wis. (2d) 47, 102 N. W. (2d) 259, which specifies, at page 62, the three courses of action open to one who has been defrauded in entering into a contract. The defrauded party may: (1) Rescind, restore the pre-existing status, and sue at law to recover his payments; (2) offer to restore the status,

---

[1] *Bjelde v. Dolan, supra.*

keep his offer good, sue in equity to rescind and recover his payments; or (3) affirm the contract and sue for the damages resulting from the fraud.

There is no question but what Standard elected the third course and since it has affirmed the contract, Standard no longer is in a position to assert a defense. Rather it is attempting to establish a claim for damages due to the fraud and as regards the plaintiff it is seeking an offset against the note of the $3,984.10 alleged damages due to fraud.

But the statutory provisions on setoffs [2] in sec. 331.07 (6), Stats. 1959, provide:

"SETOFFS. In the following cases a demand by one party may be set off against and as a defense, in whole or in part, to demands by the other:

"(6) If the action be upon a negotiable promissory note or bill of exchange which has been assigned to the party after it became due a setoff to the extent of the amount otherwise recoverable thereon may be made of a demand existing against any person who shall have assigned or transferred such note or bill after it became due, if the demand be such as might have been set off against the assignor while the note or bill belonged to him."

That statute specifically contemplates an assignment or transfer "after" the note has become due and there is no question here but what the transfer was made "before" the note was due.

The provisions of sec. 260.14, Stats. 1959, offer no greater consolation to Standard on its right to a setoff against the plaintiff's claim. This section reads as follows:

"ASSIGNMENT OF CAUSE OF ACTION NOT TO AFFECT SETOFF. In case of an assignment of a thing in action the action

---

[2] As stated in *Estate of Seybold* (1936), 223 Wis. 192, 270 N. W. 87, at page 197, "The right of setoff is purely statutory, a right which did not exist at common law." Therefore, for Standard to claim that it has the right of setoff against the plaintiff, it must show that it comes within the statutory restriction.

of the assignee shall be without prejudice to any setoff or other defense existing at the time or before notice of the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange transferred in good faith and upon good consideration before due."

Thus, as a matter of law, since Standard has affirmed its contract with Libman, Standard can neither assert fraud as a defense against the plaintiff nor claim the damages growing out of the fraud as a setoff against the amount due the plaintiff as the transferee and owner of the overdue Standard note to Libman.

Standard also contends that viewing the whole transaction there is now a partial failure of consideration as to the promissory note. Standard relies on sec. 116.33, Stats. 1957, which states: ". . . partial failure of consideration is a defense *pro tanto*." There is no failure of consideration at all here. Libman did exactly what he was supposed to do under the contract. He delivered up the 40 shares of stock as per the contract and also resigned as an officer of defendant corporation. It may be true that the 40 shares were not worth the amount that Libman represented them to be, but Standard has the remedy it elected to pursue and is bound thereby.

Issue 3. *If the plaintiff is entitled to bring suit against Standard on the overdue Standard note to Libman, which note was in turn delivered and pledged by Libman to the plaintiff, is the plaintiff limited in its recovery to the amount of the principal debt between Libman and the plaintiff ($2,500 plus interest)?* The total amount of the Standard note to Libman is $6,200 less the alleged credit of $451, or $5,749. The amount of Libman's debt to the plaintiff is $2,500 plus interest at the rate of five and one-half percent (5½%) per annum (six percent (6%) on unpaid interest) the note being executed on October 27, 1960, and due April 27, 1961, with total amount last computed for principal and

interest as of February 14, 1962, of $2,578.30. The note was renewed on April 25, 1961.

The pledgee, the plaintiff, may recover only the amount of the principal debt owed by Libman to it, namely, the $2,500 note together with interest. Although the general rule is that a plaintiff recovering on an instrument held as collateral is entitled to recover the entire amount,[3] there are exceptions. Thus, where the maker of the instrument has a good defense against the pledgor, the general rule appears to be that a *bona fide* holder without notice of such defense can recover the amount of his principal debt only.[4]

The rationale behind this exception is well stated in *Union Nat. Bank v. Roberts* (1878), 45 Wis. 373, 379:

"For it would be manifestly unjust to allow a plaintiff to recover for the use of his assignor, what the assignor could not recover for himself."

Although Standard has affirmed the contract with Libman and cannot assert the defense of fraud as against either the payee (Libman) or the transferee (plaintiff) by analogy it would be manifestly unjust to allow the plaintiff to recover the full amount of the note ($6,200 less the alleged $451 credit) only to turn it over to the pledgor (Libman) when the pledgor himself faces an action in fraud for damages arising out of the transaction giving rise to the note.

Summary judgment should therefore have been granted for the plaintiff and against the defendant Standard in the amount of $2,500 together with interest as computed to date of judgment on the Libman note. The unpaid balance of the $6,200 Standard note (less the amount to be determined as a credit in the alleged amount of $451) should be left for

---

[3] *Union Nat. Bank v. Roberts* (1878), 45 Wis. 373; 72 C. J. S., Pledges, p. 152, sec. 76; 69 A. L. R. 898.

[4] *Union Nat. Bank v. Roberts, supra,* p. 379; 72 C. J. S., Pledges, p. 152, sec. 76; 69 A. L. R. 898.

Libman to assert against Standard in connection with further proceedings on the cross complaint of Standard and the answer thereto by Libman.

*By the Court.*—Order denying summary judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion; costs on this appeal to appellant.