YOUNGER, Respondent, v. ROSENOW PAPER & SUPPLY COMPANY, INC., Appellant.

*No. 303.    Argued June 2, 1971.—Decided June 25, 1971.*
(Also reported in 188 N. W. 2d 507.)

620

621

For the appellant there was a brief by *Di Renzo & Bomier* and *Jeffrey F. Snyder,* all of Neenah, and oral argument by *Mr. Snyder.*

For the respondent there was a brief by *Jerome H. Block,* attorney, and *F. David Krizenesky* of counsel, both of Appleton, and oral argument by *Mr. Krizenesky.*

WILKIE, J.   The principal issue presented on this appeal is whether the trial court acted correctly in granting summary judgment to the plaintiff and in denying summary judgment to the defendant.

Before reaching the merits of this issue, two preliminary matters must be considered.  Both are raised by the defendant.

1.  Is the action in violation of the statute of frauds?

2.  Is the action barred by the two-year statute of limitations, sec. 893.21 (5) ?

The answer to both questions was correctly held by the trial court to be "No."

*Statute of frauds.*

Sec. 241.02 (1), Stats., is not applicable in this case:

"Noncontributory pension plans are held to give rise to a contractual obligation by the employer to pay pension benefits to the employees entitled thereto under the plan communicated to the employees where the employees thereafter remain in the employer's employment and render service for the requisite period. . . .  The same principle is applicable to profit-sharing plans. *Zwolanek v. Baker Mfg. Co.* (1912), 150 Wis. 517, 137 N. W. 769." [1]

In *Zwolanek,* which involved a profit-sharing plan, this court stated:

"It is manifest that the statute of frauds has no application to the case." [2]

---

[1] *Voigt v. South Side Laundry & Dry Cleaners* (1964), 24 Wis. 2d 114, 116, 128 N. W. 2d 411.

[2] *Zwolanek v. Baker Mfg. Co.* (1912), 150 Wis. 517, 524, 137 N. W. 769.

*Statute of limitations.*

Defendant contends that the two-year statute of limitations, sec. 893.21 (5), applies. This section provides:

"893.21 . . . Within two years:
"
"(5) Any action to recover unpaid salary, wages or other compensation for personal services, except fees for professional services."

Plaintiff urges, and the trial court agreed, that sec. 893.19 (3), Stats., applies. This section provides:

"893.19 . . . Within 6 years:
"
"(3) An action upon any other contract, obligation or liability, express or implied, except those mentioned in ss. 893.16 and 893.18."

Plaintiff contends that this is an action to enforce a contract, and also that under this court's definition of personal services in *Estate of Javornik*,[3] it is clear that the bonus plan was not set up to compensate plaintiff for his personal services but rather to "purchase" the end product of the services, *i.e.*, profit. Plaintiff also urges that the application of the two-year limitation might "invalidate every profit sharing or pension plan in the state."

In *Estate of Javornik* this court defined "personal services" as used in sec. 893.21 (5), Stats.:

"We think 'personal services' as used in sec. 893.21 (5), Stats., means human labor such as is commonly rendered in return for a salary or a wage in the case of an employee and for *'other compensation' in the case of an independent contractor or one not in an employee relationship.* Such human labor must be in the nature of a service as distinguished from the end product or the fruit of the service. While some personal services

---

[3] (1967), 35 Wis. 2d 741, 151 N. W. 2d 721.

may result in a salable article or an end product, the distinguishing feature of personal services for the purpose of this section is whether the human labor itself is sought and is the object of the compensation or whether the end product of the service is purchased." (Emphasis added.) [4]

In *Cheese v. Afram Brothers Co.,*[5] plaintiff brought actions against his employer and his union on the theory that he was wrongfully discharged, thereby breaching the collective bargaining agreement. This court upheld the lower court's order sustaining the defendant's demurrers, but reversed the court's order denying the plaintiff the right to replead on the grounds that the action was barred by sec. 893.21 (5), Stats. We held that sec. 893.19 (3) was the proper section to be applied.

*Casey v. Trecker,*[6] relied on by defendant, involved what was clearly a claim by an employee for unpaid wages against a bankrupt corporation. The action was brought against the two shareholders of the corporation personally under a statute which provided that shareholders would be liable for "all debts which may be due and owing to its clerks, servants, and laborers for services performed by such corporation . . . ."

Given all of the circumstances and facts available in this record, it is reasonable to hold that plaintiff's action here is one for breach of contract, failure to pay him the bonus as agreed, either originally or subsequently. In his complaint plaintiff was careful to allege that the bonus plan was separate from any agreement as to salary and that he had been fully compensated as agreed in that respect. Defendant does not dispute this. Although the precise terms of the agreement and the intent of the parties thereto are in dispute in the instant case, we are satisfied that the action is one for breach

---

[4] *Id.* at page 749.

[5] (1966), 32 Wis. 2d 320, 145 N. W. 2d 716.

[6] (1954), 268 Wis. 87, 66 N. W. 2d 724.

of contract. In light of *Estate of Javornik,* narrowly construing the two-year statute of limitations, we are satisfied that the six-year statute of limitations, sec. 893.19 (3), applies, rather than the two-year statute of limitations, sec. 893.21 (5).

*Summary judgment.*

This case should be tried. The trial court was in error in granting plaintiff's motion for summary judgment. There is at least one issue of fact to be resolved.

In his complaint, plaintiff pleads the resolution of November 30, 1956, his continuing employment with defendant in reliance on this resolution and then alleges:

"4. That on or about February 14, 1968, the plaintiff terminated his employment with defendant and at the said time, the value of plaintiff's bonus plan was $12,000.00. That on or about February 14, 1968, the plaintiff and defendant *agreed that defendant would pay to plaintiff all of the moneys due him in accordance with the Resolution adopted by the defendant on November 30, 1956,* except that defendant would have to compute the amount due plaintiff from January 1, 1965, to date of termination, February 14, 1968.

". . .

"6. That upon reliance of the Resolution adopted November 30, 1956, and *the express promise of the defendant, through its President, Henry Rosenow, to pay the bonus plan, in cash to the plaintiff,* and by reason of the refusal of said defendant to pay same, the plaintiff has been damaged in the sum of $12,000.00." (Emphasis supplied.)

At oral argument, however, plaintiff stated unequivocally that his cause of action did not depend "one iota" on the alleged oral agreement of February 14, 1968, but rather that his case would "stand or fall" on the resolution. And so it shall.

In its answer, defendant, through its president, Henry Rosenow, admitted the resolution of November 30, 1956, but denied any agreement to pay plaintiff any money pursuant to that resolution. The answer also affirmatively alleged:

"2. . . .

"That the defendant *affirmatively alleges that said 'Stock Purchase Plan' was orally set forth by the defendant's president, H. J. Rosenow, to the plaintiff and agreed upon by the said plaintiff,* wherein only if and when the plaintiff had accumulated the total sum of $25,000.00 as a book credit under the above resolution, the defendant corporation by its officers and stockholders would reorganize the stock ownership and the plaintiff would receive 250 shares of stock and the other two stockholders would receive approximately 1000 shares. The credit accumulated by plaintiff would only be converted into stock and only when and if the amount reached $25,000.

" . . .

"4. . . . denies that the defendant agreed to pay plaintiff any money under bonus plan and affirmatively alleges that it was agreed by the parties prior to that date that. unless plaintiff's account arrived to $25,000.00, it was worthless and if it did arrive at $25,000.00, then the defendant, through a reissuance of all of the stock of the corporation, would give the defendant [sic] 250 shares of stock.

" . . .

"6. Denies that the president of the defendant corporation or any other officer promised to pay any bonus plan in cash to the plaintiff . . . ." (Emphasis supplied.)

At least two material issues of fact are created by the pleadings:

1. The agreement of the parties, as evidenced by the resolution of November 30, 1956, as to the nature and details of the "bonus plan;"

2. Whether there was an agreement entered into between the parties on or about February 14, 1968, that

defendant would pay plaintiff, in cash, the amount credited to plaintiff in the bonus plan account. On oral argument plaintiff, however, stated he in no way relied on this allegation in the pleadings.

In the affidavit of plaintiff's attorney in support of plaintiff's motion for summary judgment, in addition to the resolution of November 30, 1956, he avers that defendant carried on its books "a ledger designated 'Employee Stock Purchase Plan' " and that "defendant's balance sheet of December 31, 1967, . . . reflects a liability of the corporation for Employee Stock Purchase Plan . . . ."

Neither the affidavit nor the documents settle the issue raised by the pleadings. Certainly plaintiff has not, prima facie, established the allegations in his complaint that defendant agreed to pay him in cash. They do establish that such a bonus plan was set up pursuant to the resolution, but this was not denied by defendant. They do not establish the nature or details of the bonus plan, nor do they refute the denial that the resolution contemplated a cash payment or defendant's affirmative allegation that plaintiff orally agreed that the bonuses would be credited toward the purchase of stock and then only when and if the amount credited reached $25,000. Therefore, a material issue of fact remained, and summary judgment was not appropriate.[7]

Since plaintiff states that his cause of action is based entirely on the resolution itself, the legal effect of the resolution must be determined. While the legal effect to be given an agreement may, *in a proper case,* be determined on a motion for summary judgment,[8] where there is a dispute as to the intent of the parties to the

[7] *Jahns v. Milwaukee Mut. Ins. Co.* (1968), 37 Wis. 2d 524, 155 N. W. 2d 674.

[8] *Northwest Capital Corp. v. Kimmel* (1967), 34 Wis. 2d 25, 148 N. W. 2d 738; *Pattermann v. Whitewater* (1966), 32 Wis. 2d 350, 145 N. W. 2d 705.

agreement, a fact issue is presented,[9] and summary judgment is inappropriate.

This resolution is ambiguous. It calls for "a bonus plan [to] be set up," provides for increasing percentages of annual net profits, and states that it shall "be known as 'Stock Purchase Plan.'" Plaintiff's moving papers establish that the plan was indeed set up, an account entitled "Employee Stock Purchase Plan," and that this was carried as a liability. No other details of the plan are found anywhere in this record. While these documents seem to indicate that the bonus plan was a stock purchase plan, the details of it are nowhere to be found in this record. Certainly, there is no evidence of any kind that plaintiff was to be paid in cash.

Plaintiff asserts that this court has always been prepared to look behind the name given an agreement by the parties to its substance. Admittedly, the name of an agreement or document is not controlling, and in a proper case the court should and will disregard it.[10] However, it is some evidence of the nature of the agreement and the intent of the parties, unless it can be established that the nature of the agreement is clearly different from that which its name designates. Plaintiff has in no way shown that the "bonus plan" was not in fact a "stock purchase plan."

As for plaintiff's assertion that the pleadings cannot be considered on a motion for summary judgment, the opposite is the law.[11] The pleadings must be looked to in order to determine the issues.[12] If the pleadings present no issues of fact, then summary judgment is proper. If, however, they do present substantial factual

[9] *Lemke v. Larsen Co.* (1967), 35 Wis. 2d 427, 151 N. W. 2d 17.

[10] *Rice v. Reich,* ante, p. 205, 186 N. W. 2d 269.

[11] *See, e.g., Balcom v. Royal Ins. Co.* (1968), 40 Wis. 2d 351, 359, 161 N. W. 2d 918.

[12] *Peoples Trust & Savings Bank v. Standard Printing Co.* (1963), 19 Wis. 2d 27, 31, 119 N. W. 2d 378.

issues, the moving party must present evidence which, if uncontroverted by the opposing party, would entitle him to judgment if his theory of the law is correct.

" 'If the pleadings make a case for a trial of a material issue of fact . . . summary judgment will be denied unless it appears from the affidavits that different conclusions of essential ultimate facts cannot reasonably be drawn. . . .' " [13]

Defendant not only opposed plaintiff's motion for summary judgment but entered its own, based in part on the statute of frauds, and the statute of limitations it viewed as applicable, and its view that the resolution contract was too indefinite to be enforceable.

In support of its motion, defendant presented an affidavit of its counsel. The averment required in sec. 270.635, Stats., *i.e.*, that the plaintiff's cause of action has no merit, is not met by an affidavit of counsel to that effect. [14] None was made by defendant-corporation through any of its officers. In any event, summary judgment was properly denied defendant on its alternative claims that the statute of frauds or the statute of limitations barred plaintiff's action. Furthermore, the resolution contract was not, as a matter of law, too indefinite to be enforced.

Neither party has established a prima facie case in their moving papers. [15] There is a substantial issue of fact to be resolved and the inferences to be drawn from the resolution of November 30, 1956, are not without doubt. [16] An inference opposite to that drawn by the

[13] *Balcom v. Royal Ins. Co., supra,* footnote 11, at page 359, note 2.

[14] *Schandelmeier v. Brown* (1968), 37 Wis. 2d 656, 660, 155 N. W. 2d 659.

[15] *Jahns v. Milwaukee Mut. Ins. Co., supra,* footnote 7.

[16] *Id.*

trial court in granting summary judgment to the plaintiff would not be unreasonable.[17]

One further matter should be settled in anticipation of the trial on remand of this controversy.

While the affidavit of defendant's counsel contains primarily conclusions of law and no evidentiary facts which would, prima facie, establish defendant's right to summary judgment, at the hearing on the motions defendant produced a certified copy of a letter from the files of the Outagamie county court. This letter was one written by Henry J. Rosenow three years earlier (1967) in connection with a divorce action involving plaintiff. No objection was made by plaintiff to defendant's failure to attach the letter to its moving papers or its failure to refer to the letter therein. However, plaintiff did object to its admissibility under sec. 885.16, Stats., the "dead man's statute." Apparently the court refused to consider it because of its view that it was precluded by the "dead man's statute." Undoubtedly defendant will seek to present it as evidence at trial, and since it appears to be admissible, the matter should be settled now.

Unfortunately the letter itself was not submitted and is not physically a part of this record. The nature of the letter and portions of it are in the transcript of the hearing, however:

"[*Defendant's counsel*] : . . .

"After the time—since the time of the initiation of this resolution to the time that the plaintiff left the employ of the defendant, the plaintiff was involved in a divorce action in this court in this county. At that time there was some question as to whether or not the valuation of this plan should enter into the divorce settlement. There were some questions on the record at a preliminary hearing raised as to whether or not this plan had any value at all, and the present plaintiff, Dean

[17] *Frew v. Dupons Construction Co.* (1968), 37 Wis. 2d 676, 155 N. W. 2d 595; *Foryan v. Firemen's Fund Ins. Co.* (1965), 27 Wis. 2d 133, 133 N. W. 2d 724.

Younger, said that he would get in touch with his employer and he would ask his employer to send a letter to counsel for his wife and inform him regarding the plan. I have a copy of that letter with me today, and it should have been attached to the affidavit. I apologize to the court for not having done so. The letter is dated June 2, 1967, and it's from the President of the Rosenow Paper Company. It was filed in Outagamie county court on July 24, 1967. This is a certified copy . . . . The letter reads as follows: 'The Rosenow Paper Company is a closed corporation, the stock being owned by Mrs. Rosenow and myself. Therefore, it has no market value. The stock-purchase plan and'—here this letter is referring specifically to the stock-purchase plan at issue— 'was an agreement by which a percentage of the net profit was to be set aside for the eventual purchase of stock by Dean R. Younger for the eventual purchase of stock. However, for the last two or three years where there have been years there has been no profit and we suffered a loss. There is no fund or reserve from which any payment could be made. *It was never intended that this form should be a cash bonus.* This plan was merely intended for Mr. Younger to purchase company stock and *there is no provision of any kind for cash payment.'* There is a P. S. on the bottom of the letter: 'It was also understood that any stock Dean Younger eventually would acquire was not to be transferred or sold to anyone else.' " (Emphasis added.)

The "dead man's statute" has no application to this letter. As noted in *Wisconsin Civil Trial Evidence:*

"The statute is concerned only with the competency of the witness to testify—not with the contents of his testimony or with the written evidence he introduces. Consequently, although a witness may introduce a letter received by him from the deceased, he may not testify as to the contents of the letter which he claims he lost. Similarly, the witness may authenticate a writing concerning a transaction with the deceased, because he is merely identifying the document, and not testifying about the circumstances of the transaction." [18]

[18] Mallare, *Wisconsin Civil Trial Evidence*, pp. 15, 16, ch. 1, sec. 1.64.

Plaintiff's theory, apparently, is that the letter is not competent evidence because he is an "opposite party" protected by the statute, and because no representative of defendant could testify as to the letter, whether the present president of defendant-corporation or defense counsel. This theory is without merit. The contents of the letter would be clearly admissible as part of defendant's case, providing it meets the other requirements of the rules of evidence and defendant properly presents it.

Further, the statute is otherwise inapplicable to this letter, as evidenced by the following from *Wisconsin Civil Trial Evidence:*

"Sec. 1.642 **Personally with the Deceased**
"The transaction or communication must be one in which the interested survivor and the deceased mutually and actively participated. . . .

" . . .

"Sec. 1.643 **Transaction or Communication**

" . . .

"(2) *Written.* Since the statute is only concerned with the competency of the witness to testify and not with the introduction of evidence, any writing which describes a transaction or communication with the deceased should be admissible if it is not objectionable under any of the other exclusionary rules of evidence governing documents. . . .

"The interested person may be permitted to lay a foundation for the introduction of such documents, or be competent to testify to the receipt, content, signature, manner of execution, alteration or clerical error of a writing properly in evidence. . . ." [19]

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.

---

[19] *Id.* at pages 16–18.