PENINSULAR CARPETS, INC., Appellant, v. BRADLEY HOMES, INC., Respondent.

*No. 290. Submitted under sec. (Rule) 251.54 March 29, 1973.—Decided April 20, 1973.*
(Also reported in 206 N. W. 2d 408.)

408

For the appellant the cause was submitted on the briefs of *Robert A. Christensen* and *Foley & Lardner,* all of Milwaukee.

For the respondent the cause was submitted on the brief of *Robert M. Siegman* and *Aaron Boxer,* both of Milwaukee.

HANLEY, J. The sole issue presented on this appeal is whether the trial court erred in denying plaintiff's motion for summary judgment.

In the past, this court has indicated a reluctance to reverse orders denying motions for summary judgment

since, for the most part, not many cases easily lend themselves to purely legal rather than factual issues. *Balcom v. Royal Ins. Co.* (1968), 40 Wis. 2d 351, 161 N. W. 2d 918. As a remedy, summary judgment is drastic which cannot or should not be used to institute a trial by affidavit or adverse examination. *Voysey v. Labisky* (1960), 10 Wis. 2d 274, 103 N. W. 2d 9; *Jahns v. Milwaukee Mut. Ins. Co.* (1968), 37 Wis. 2d 524, 155 N. W. 2d 674. For this reason, the burden of proof rests with the movant, *Kubiak v. General Accident Fire & Life Assur. Corp.* (1962), 15 Wis. 2d 344, 349, 113 N. W. 2d 46, and if there are any material facts in dispute or any reasonable inferences that might be drawn from undisputed facts which point to a result contrary to the one sought by the movant, the motion must be denied. *Marshall v. Miles* (1972), 54 Wis. 2d 155, 194 N. W. 2d 630. These issues remain for the trier of fact and the only question for a trial court is whether such material issues of fact exist in the first instance.

In keeping with the nature of the remedy itself, this court has set forth for the aid of trial courts the precise methodology which should be employed in determining whether the case then before them is an appropriate one for disposition by summary judgment. This methodology was described with great particularity in the recent case of *Marshall v. Miles, supra,* where, at pages 160, 161, it is stated:

"The summary-judgment procedure initially requires an examination of the pleadings to determine whether a cause of action has been stated and whether material issues of fact are presented. *Younger v. Rosenow Paper & Supply Co.* (1971), 51 Wis. 2d 619, 188 N. W. 2d 507. However, the allegations of the pleadings may not be considered as evidence or other proof on a disposition of the motion. *Milwaukee County v. Schmidt* (1968), 38 Wis. 2d 131, 156 N. W. 2d 493; *McCluskey v. Thranow* (1966), 31 Wis. 2d 245, 142 N. W. 2d 787. Assuming a

cause of action and the existence of factual issues, an examination is then made of the moving party's (defendant's) affidavits and other proof to determine whether a prima facie defense has been established. *Cirillo v. Milwaukee* (1967), 34 Wis. 2d 705, 150 N. W. 2d 460. If the moving party has made a prima facie case for summary judgment, an examination is then made of the opposing party's (plaintiff's) affidavit and other proof to determine whether there exists disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial. *Skyline Construction, Inc. v. Sentry Realty, Inc.* (1966), 31 Wis. 2d 1, 141 N. W. 2d 909."

This methodology must now be applied to the case at bar and the appropriate test is whether the trial court abused its discretion in denying plaintiff's motion for summary judgment. *Hardscrabble Ski Area v. First Nat. Bank* (1969), 42 Wis. 2d 334, 166 N. W. 2d 191.

Looking first then to the pleadings, paragraph 3 of plaintiff's complaint alleges that on August 3, 1970, the parties entered into a purchase order [1] contract for a

---

[1] "PENINSULAR CARPETS INC.  No. 903
TAMPA FLA.

Town & Country Plaza  5802 N. Dale Mabry
884–4907  884–8265  884–6115

Date  3 Aug. 1971  [sic] Order No. _____  Deliver As Per Request
Sold to  Bradley Homes Inc
Address  614 W Brown Deer  City  Milwaukee, W
Phone  414–351/1540  Terms  As per agreement & assignment to Coronet Carpet Co. subject to approval of buyer & seller and or assignee

Description  Price

(1)  25,447.50 sq yd 12′ 100% Nylon carpet. Carpet to be Coronet Carpet Co. Park Manor quality colors to be dark gold from #222 Twnny Gold & 008 bronze Olive amount of each color to be given as carpet is to be used.

specified amount of carpeting to be purchased by the defendant from the plaintiff. Paragraph 3 of defendant's answer, while admitting that a document was in fact executed, denies that the document constituted a contract, rather alleging that it was "a memorandum of some of

(2) 25,447.50 Hi Step Topper Rubber Contract Pad . . . as per sample

(3) Selling price of carpet & pad $3.585 per sq yd F O B job site

(4) Carpet & padding to be installed by Shaw's Carpet Service—Milwaukee, under separate contract @ 1.75 pr. yd. This includes all material labor storage and insurance This contract subject to credit approval

Price Does Not Include Moving Heaters or Cutting Doors

| | |
|---|---|
| Total Sale | 91229.29 |
| Tax | 3649.19 |
| Total Amt. | 94878.48 |
| Paid Dn. | |
| Bal. Due | 94878.48 |
| | Completed |

CONDITIONS OF SALE

NOTICE TO THE BUYER: (a) DO NOT SIGN THIS BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (b) YOU ARE ENTITLED TO AN EXACT COPY OF THE PAPER YOU SIGN. (c) YOU HAVE THE RIGHT TO PAY IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE TIME PRICE DIFFERENTIAL.

It is understood and agreed that the title to said property shall remain in the seller until the total amount above specified shall have been paid and that the goods covered in this contract shall not be removed from my present residence. If goods are lost or damaged by fire or otherwise, it shall not affect the indebtedness therefor. Any violation of the above contract or failure to make payments as agreed shall entitle the said Vendor to repossess and remove said goods without legal liability and all previous payments shall be applied as rent on said goods.

BUYER /s/ Jack E. Meyers V. President
SELLER /s/ Jesse Grossman"

the terms which were to be incorporated in a contract." Likewise, paragraph 6 alleges that the transaction was subject to the approval by the defendant of the agreements to be drawn and admits by failure to deny that defendant repudiated this document. Thus, the pleadings raise the question of whether the document executed on August 3d is in fact a contract or merely a memorandum of some terms which were later to be incorporated in a contract; the question being one of intent.

Since the alleged contract is one for the sale of goods, article 2 of the Uniform Commercial Code, more particularly sec. 402.102, Stats.,[2] is applicable. Additionally, since the question before this court is whether the parties actually intended to form a contract on August 3d when the document was executed, sec. 402.204, Stats. (UCC sec. 2–204) is also of prime importance, particularly sub. (3) thereof which provides:

"(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

In his treatise on the subject, Professor Corbin said of the intent of the parties to enter into a contract:

"One of the most common illustrations of preliminary negotiation that is totally inoperative is one where the parties consider the details of a proposed agreement, perhaps settling them one by one, with the understanding during this process that the agreement is to be embodied in a formal written document and that neither party is to be bound until he executes this document. *Often it is a difficult question of fact whether the parties have this understanding;* and there are very many decisions

---

[2] Sec. 402.102, Stats., in part provides:

"Unless the context otherwise requires, this chapter applies to transactions in goods; . . ."

holding both ways. These decisions should not be regarded as conflicting, even though it may be hard to reconcile some of them on the facts that are reported to us in the appellate reports. *It is a question of fact that the courts are deciding, not a question of law;* and the facts of each case are numerous and not identical with those of any other case. *In very many cases the question may properly be left to a jury.* (Emphasis added.) 1 Corbin, *Contracts* (1963), p. 97, sec. 30.

In support of its argument that the document executed on August 3d embodied a definite expression of intent by the parties that a contract was to thereby be formed, plaintiff relies on selected excerpts of the deposition of Mr. Jack E. Meyers, who signed the document. It is contended that these excerpts [3] demonstrate that Meyers

[3] "*Q.* . . . You made a response, and I have asked you if there is anything in writing that is referred to specifically in this 'as per agreement.'

"*A.* No, that's what we were waiting for.

"*Q.* In other words, this agreement that—when you used the word 'agreement,' you are referring to something in the future and not an agreement in the past?

"*A.* Right, except an agreement to encompass what we discussed verbally.

"*Q.* Which was?

"*A.* Which was that we would buy the carpeting and install it, have it installed in the apartments and pay $5.33 a yard, I believe, and pay within 10 days after each apartment was completed.

"*Q.* Now, I want to direct your attention to paragraph 4 of this answer, and you say here that the terms and conditions of the proposed agreement were directly contrary to those which had been agreed to in oral negotiations. I want to ask you, sir, if there is anything else which you know of being in this agreement, recognizing, of course, you have never read it, which is directly contrary to the oral agreement, anything you have not already told me about?

"*A.* I don't think so."

Also in support of his premise that Meyers understood the August 3d document to represent a contract, plaintiff points to the repeated use of the word "contract" in reference to the August 3d document by Meyers' testimony.

thought he had a definite agreement with plaintiff for the purchase of carpeting under the terms of the August 3d document and, therefore, regardless of the fact that the subsequent document submitted at the end of August was not in complete compliance with the provisions originally agreed upon on August 3d, the August 3d document represents an intent that it be a contract, mutually binding between the parties.

However, certain excerpts from Meyers' deposition would support a reasonable inference that the language contained in the August 3d document shows an express intent not to be bound on any contract until a subsequent formal agreement was approved by the parties. When asked what was said at the time of the meeting with Grossman, Meyers responded:

"Well, he brought this Peninsular Carpet out, and he brought this form to write it out, and he said that—I don't remember what he said to explain it—I said okay, why don't you go back and get a contract or an agreement or something legal from them and come back and we will spell the terms out exactly, and he said that he couldn't do it, *he was leaving town, and he had to get some memo, he called it a memorandum or memo, and take it back, and the contracts would be forthcoming, and that's why he put in here: 'as per agreement, assignment or assignment to Cornet [sic] Carpet Company, subject to approval of buyer and seller and/or assignee.'* He was supposed to get some kind of agreement up, but he wanted to show this to—what the contents were and the amount of yardage and price." (Emphasis added.)

The use of the phrase "as per agreement, assignment . . . to Cornet [sic] Carpet Company, subject to approval of buyer and seller and/or assignee" could arguably support a reasonable inference of expressed intent that there was to be no legal obligation until the subsequent formal document met with their approval.

In *Younger v. Rosenow Paper & Supply Co.* (1971), 51 Wis. 2d 619, 188 N. W. 2d 507, the court at page 629 stated:

"Neither the affidavit nor the documents settle the issue raised by the pleadings . . .

". . . While the legal effect to be given an agreement may, *in a proper case,* be determined on a motion for summary judgment, where there is a dispute as to the intent of the parties to the agreement, a fact issue is presented, and summary judgment is inappropriate."

In *Lemke v. Larsen Co.* (1967), 35 Wis. 2d 427, 151 N. W. 2d 17, it was stated at pages 431, 432 that:

"While the construction of a contract when it is not ambiguous, is a matter of law for the court to determine, however, when there is ambiguity, the sense in which the words are therein used is a question of fact.

"The issue involves the intention of the parties at the time the contract was entered into, and therefore a clearly defined issue of fact is raised. *Bergman v. Berns-dorf* (1955), 271 Wis. 401, 73 N. W. (2d) 595, 74 N. W. (2d) 744. When the language of a contract, considered as a whole, is reasonably or fairly susceptible to different constructions, it is therefore ambiguous, and such being the situation, the sense in which the words are therein used is a question of fact. *Cargill Coal Co. v. Valentine* (1957), 275 Wis. 598, 82 N. W. (2d) 883."

While *Lemke* concerned the meaning that the parties gave to a word in a contract already formed, the same reasoning would apply where, as here, it cannot be determined either from the document itself or the affidavits in support of the motion that the words used in the document did not represent on the part of the defendant an express intent not to enter into any binding contract until its subsequent approval of a formal writing which both parties agreed would be forthcoming.

A trial court's refusal to grant summary judgment is to be reversed only if there has been a clear abuse of

discretion. *Schultz v. Tobin* (1970), 47 Wis. 2d 230, 177 N. W. 2d 128. We conclude that in the instant case the trial court did not abuse its discretion in denying plaintiff's motion for summary judgment.

*By the Court.*—Order affirmed.