RILEY CONSTRUCTION COMPANY, INC., Respondent, v. SCHILLMOELLER & KROFL COMPANY, INC., Defendant: ARGONAUT INSURANCE COMPANY, Appellant. [Case No. 50.]

ARNOLD P. JOHNSON, INC., Respondent, v. SCHILL-MOELLER & KROFL COMPANY, INC., Defendant: ARGONAUT INSURANCE COMPANY, Appellant. [Case No. 51.]

MATSON, Respondent, v. SCHILLMOELLER & KROFL COMPANY, INC., Defendant: ARGONAUT INSURANCE COMPANY, Appellant. [Case No. 52.]

*Nos. 50–52 (1974). Submitted under sec. (Rule) 251.54 October 30, 1975.—Decided December 19, 1975.*
(Also reported in 236 N. W. 2d 195.)

For the appellant the cause was submitted on the briefs of *Arvid A. Sather* of Madison.

For the respondents the cause was submitted on the brief of *Phillips, Richards & Mayew* of Kenosha.

WILKIE, C. J. This appeal involves three summary judgments in favor of the plaintiff-subcontractors, Riley Construction Company, Arnold P. Johnson, Inc., and Stanley J. Matson, against the defendant-surety, Argonaut Insurance Company, on a payment bond given by the insurance company and the general contractor, Schillmoeller & Krofl Company, Inc.

Summary judgment should not have been granted. It was reversible error for the trial court to impose liability upon Argonaut as surety without even considering whether or not the principal under the bond, the general contractor, was liable for payment under the subcontract. Consideration of the general contractor's defense to liability under the subcontract would necessarily involve factual issues and, thus, make summary judgment an inappropriate remedy.

The general contractor entered into a contract on July 14, 1971, with the owner and developer of land located in Kenosha, Wisconsin. The contract provided for the construction of condominium apartments to be known as Harbor Villa. Subsequently, the general contractor made contracts with the three subcontractors for various work to be done on the project. The agreement with Riley was made on July 8, 1971; the agreement with Johnson, on July 21, 1971; and the agreement with Matson, on September 24, 1971. All three contracts contained the same provisions regarding payment:

"General Contractor agrees to pay Sub-contractor, if Sub-contractor shall fulfill to the satisfaction of General Contractor and Architect and complete every agreement on its part herein contained, for the performance of the contract, price of . . . as follows:

" 'During the satisfactory progress of the work and after receipt of satisfactory evidence of Sub-contractor's payment for labor and material furnished by Sub-contractor, on or before the 10th day of each month, <u>Ninety</u> per cent (<u>90</u>%) of the value of labor and materials wrought into the building up to the 1st day of each month as estimated by General Contractor and subject to the approval of Architect, less aggregate amount of previous payments, if any, after such equivalent payment has been received by General Contractor from Owner. Final payment shall be due within thirty (30) days after completion of the building or project and after final payment is made by Owner to General Contractor. No claim for extras will be allowed unless authorized in advance in writing by General Contractor.' "

The general contractor and the insurance company, as principal and surety, respectively, gave a payment bond on November 9, 1971, which provided in relevant part as follows:

"Now, Therefore, the Condition of this Obligation is such that if the Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

" . . .

"2. The above named Principal and Surety hereby jointly and severally agree with the Owner that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90 days) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit."

The three subcontractors afterward performed the work they had agreed to, and there is no question that it was completed according to the specifications of the

subcontracts. However, the owner never paid the general contractor the full amount for this work. The general contractor, relying upon the subcontractual provision of no payment until equivalent amounts were received from the owner, in turn did not pay the subcontractors the full amount for their work.

On July 2, 1973, the three subcontractors, as claimants under the bond, commenced separate legal actions against the general contractor and the insurance company. Riley sought judgment in the amount of $54,579.43; Johnson, in the amount of $13,873.92; and Matson, in the amount of $6,310. These actions were consolidated for trial and the subcontractors were granted summary judgment against the insurance company alone.

## I. *Liability of the surety.*

In its answer to the complaint, and in its affidavit in opposition to the motion for summary judgment, the surety asserted the defense that it was not liable on the bond because the principal-general contractor was not liable on the subcontracts for the payment of which the bond was given. The basis of this defense was the subcontractual provision that payment was not to be made to the subcontractors until a certain time after it was received from the owner. The surety (as had the general contractor in its answer) argued that this provision established a condition precedent, and did not merely fix a time for payment. During the argument on the motion for summary judgment, the surety also offered to provide specific evidence at a later trial regarding the circumstances under which the subcontract was made, which would show that the general contractor and the subcontractor intended to share the risk of nonpayment by the owner.

The trial court, however, limited its consideration to the provisions of the surety bond. It refused to allow the surety to assert a defense which the general contractor had under the subcontracts, and to even consider these

subcontracts or the liability of the general contractor thereunder. The basis for its grant of summary judgment was its interpretation of the surety bond, exclusive of the subcontracts it was given to secure. The trial court decided that the surety became absolutely liable for payment to the subcontractors after ninety days had passed without payment by the general contractors, irrespective of whether the general contractor was liable to the subcontractors under the subcontracts.

But the law of suretyship is to the contrary. Because the surety's obligation is derived from that of the principal debtor, the liability of the surety is ordinarily measured by the liability of the principal. If the principal is not liable to the claimant, then the surety is not liable either. In addition, the surety may normally set up any defense available to the principal.[1] Although Wisconsin has never enunciated these precise rules, cases decided in other jurisdictions have unanimously followed them.[2] In Wisconsin this court has long adhered to a rule which is thoroughly consistent with these rules, namely, that the bond and the contract which it secures should be construed together.[3] Thus, the conclusion is inescapable

---

[1] 74 Am. Jur. 2d, *Suretyship*, pp. 28, 76, secs. 25, 104; 72 C. J. S., *Principal & Surety*, pp. 572, 703, secs. 92, 255. The only recognized exception is that a surety may not assert extremely "personal" defenses of a principal, such as infancy or insanity.

[2] *Flickinger v. Swedlow Engineering Co.* (1955), 45 Cal. 2d 388, 289 Pac. 2d 214, 218; *In re MacDonald Estate* (1954), 341 Mich. 382, 67 N. W. 2d 227, 229; *Modern Brokerage Corp. v. Massachusetts Bonding & Ins. Co.* (D. C. N. Y. 1944), 54 Fed. Supp. 939, 940; *Tuolumne Gold Dredging Corp. v. Walter W. Johnson Co.* (D. C. Cal. 1947), 71 Fed. Supp. 111, 114; *Phelps v. Dawson* (8th Cir. 1938), 97 Fed. 2d 339.

[3] *Iowa Sheet Metal Contractors v. Knab Co.* (1962), 17 Wis. 2d 493, 497, 117 N. W. 2d 682; *Building Contractors' Limited Mut. Liability Ins. Co. v. Southern Surety Co.* (1924), 185 Wis. 83, 86, 87, 200 N. W. 770; *New York Continental Jewell Filtration Co. v. Kenosha* (1918), 167 Wis. 371, 374, 167 N. W. 451; *Builders Lumber & Supply Co. v. Chicago Bonding & Surety Co.* (1918), 167 Wis. 167, 171, 166 N. W. 320.

that the trial court erred in refusing to consider the sub-contracts, the liability of the general contractor thereunder, and the defense of the general contractor, as asserted by the surety.

The trial court also erred in its interpretation of the surety bond itself. It construed the bond to mean that, if the claimants were not paid within ninety days after completion of the work, then the surety became automatically and absolutely liable for full payment, with no need for consideration of other matters. Section 2 of the bond makes it clear, however, that the passage of ninety days only confers upon the claimants the right to sue the principal or the surety or both. In this suit it must be determined whether the sums sought by the claimants are "justly due." While in most cases this would be a perfunctory matter involving only proof that the contract work had been completed, in the instant case it necessarily requires a determination of the validity of the general contractor's and surety's defense. In other words, it requires a decision as to whether the payment provisions of the subcontract create a condition precedent, or merely fix a time for payment. But this decision was not made or the matter considered by the trial court.

Our view of what the trial court should have done before entering judgment against the surety is also consonant with the procedure envisioned by the Wisconsin construction lien law. Sec. 289.035 (1), Stats., of that law provides that the payment bond shall be conditioned for the payment of labor and material claims to every person "entitled thereto." Sub. (2), in a manner analogous to the payment bond in question here, provides in relevant part:

"Any party in interest may, not later than one year after the completion of the contract, maintain an action in his own name against the prime contractor and the sureties upon the bond for the recovery of any damages he has sustained by reason of the failure of the prime

contractor to comply with the contract or with the contract between the prime contractor and subcontractors. . . ."

This subsection makes it clear that, in order to recover from the surety on the bond, a subcontractor claimant must show that his damages were sustained "by reason of the failure of the prime contractor to comply with . . . the contract between the prime contractor and subcontractors." He can sue directly on the bond, but a prerequisite to the surety's liability on the bond is a determination that the prime contractor has breached the subcontract. This determination was not made by the trial court, in spite of the fact that the prime contractor affirmatively asserted that he had not breached the contract.

II. *Propriety of summary judgment.*

Once it is realized that the validity of the defense to liability under the subcontract is a necessary and proper issue in this case, it follows that summary judgment is an inappropriate remedy. The language of the contract is susceptible either to the interpretation that payment by the owner was a condition precedent to payment to the subcontractor, or to the interpretation that payment by the owner merely fixed a convenient time for payment to the subcontractor. Since this provision is ambiguous, it is proper for the trial court to hear evidence regarding the circumstances surrounding the making of the subcontracts. The surety is prepared to introduce evidence which he claims will show that the parties intended to create a condition precedent and to share the risk of default by the owner. The subcontractors, on the other hand, claim that the provision was not intended as a condition precedent and presumably will introduce evidence to this effect. Thus, the intent of the parties to the subcontracts has become a disputed issue of fact, and it is well-settled that summary judgment does not

lie where there is a disputed issue of material fact.[4] Moreover, it cannot be asserted that the surety has failed to raise this issue of material fact, since it asserted the defense both in its answer and in its affidavit in opposition to the motion for summary judgment.

This court has on several occasions held that summary judgment does not lie when there are arguably ambiguous provisions in a contract and the intent of the parties to the contract is disputed.[5] This is precisely the situation here, and summary judgment should have been denied.

There is an additional reason why summary judgment does not lie in this case. Wisconsin has not yet decided the question of whether this widely used payment provision in construction contracts creates a condition precedent, or merely fixes a time for payment. It is crucial that, when this question is resolved in Wisconsin, it be resolved on the basis of all the relevant evidence. Yet thus far the record consists solely of the pleadings, which allege only ultimate facts, and the summary judgment affidavits, which allege sketchy evidentiary facts. There is no evidence at all regarding the intent of the parties in entering into the disputed subcontracts, or of the circumstances surrounding the making of the subcontracts. It would be rash to set a precedent based upon this flimsy record. What was said in *Zimmer v. Daun* is especially relevant here:

---

[4] *Peninsular Carpets, Inc. v. Bradley Homes, Inc.* (1973), 58 Wis. 2d 405, 410, 206 N. W. 2d 408; *Marshall v. Miles* (1972), 54 Wis. 2d 155, 161, 194 N. W. 2d 630.

[5] *Younger v. Rosenow Paper & Supply Co.* (1971), 51 Wis. 2d 619, 629, 188 N. W. 2d 507 (parties dispute the intended meaning of an employee bonus plan); *Lemke v. Larsen Co.* (1967), 35 Wis. 2d 427, 431, 432, 151 N. W. 2d 17 (parties dispute the intended meaning of one party's promise to "endeavor" to harvest the corn planted by the other party); *Skyline Construction, Inc. v. Sentry Realty, Inc.* (1966), 31 Wis. 2d 1, 141 N. W. 2d 909 (parties dispute the intended meaning of warranty that "there is no subsoil condition" under certain land).

"Because of the importance of the construction as a precedent, a determination of all the facts material to the construction is needed, and we are not convinced the affidavits set forth all the relevant facts which should be considered."[6]

This forbearance would also be in line with the procedure followed in other jurisdictions which have already decided this same point of law. These jurisdictions have split on the question, although the vast majority have decided that such a repayment provision merely fixes a convenient time for payment.[7] The point is that none of these cases were decided solely on the basis of the pleadings and summary judgment affidavits. Several involved full trials to the court. Others were disposed of by summary judgment, but only after the parties had entered into a full and formal stipulation of facts, or at least responded to interrogatories.

*By the Court.*—Judgments reversed.

[6] *Zimmer v. Daun* (1968), 40 Wis. 2d 627, 631, 162 N. W. 2d 626. *See also: United Farm Agency, Inc. v. Niemuth* (1970), 47 Wis. 2d 1, 6–8, 176 N. W. 2d 328.

[7] Cases which have construed this type of payment provision as fixing a time for payment include: *Electrical Co. v. Construction Co.* (1971), 12 N. C. App. 63, 182 S. E. 2d 601; *Byler v. Great American Ins. Co.* (10th Cir. 1968), 395 Fed. 2d 273; *Atlantic States Construction Co. v. Drummond & Co.* (1968), 251 Md. 77, 246 Atl. 2d 251; *A. J. Wolfe Co. v. Baltimore Contractors, Inc.* (1969), 355 Mass. 361, 244 N. E. 2d 717; *Darrell T. Stuart Contractor of Arizona v. Bridges* (1965), 2 Ariz. App. 63, 406 Pac. 2d 413; *Mignot v. Parkhill* (1964), 237 Ore. 450, 391 Pac. 2d 755; *Thos. J. Dyer Co. v. Bishop International Engineering Co.* (6th Cir. 1962), 303 Fed. 2d 655. Cases which have construed similar provisions as conditions precedent include: *Peacock Construction Co. v. West* (1965), 111 Ga. App. 604, 142 S E. 2d 332; *Standard Asbestos Mfg. Co. v. Kaiser* (1942), 316 Ill. App. 441, 45 N. E. 2d 75; *Mascioni v. Miller, Inc.* (1933), 261 N. Y. 1, 184 N. E. 473.