In re DORE & ASSOCIATES CON-
TRACTING, INC., Debtor.

DORE & ASSOCIATES
CONTRACTING, INC.,
Plaintiff,

v.

AMERICAN DRUGGISTS' INSURANCE
COMPANY, et al., Defendants.

Bankruptcy No. 81–00695.
Adv. No. 82–0207.

United States Bankruptcy Court,
E.D. Michigan, N.D.

Nov. 2, 1984.

John J. Hebert, Bay City, Mich., for Dore & Assoc.

Randall J. Sandfort, John R. Sosey, Milwaukee, Wis., for Barrett Wrecking.

**718**

Carl Ricciardi, Wausau, Wis., Kenneth W. Kable, Saginaw, Mich., for City of Wausau.

Jimm F. White, Troy, Mich., for American Druggist.

## MEMORANDUM OPINION ON BARRETT WRECKING'S MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION AGAINST COMMENCING LITIGATION AGAINST AMERICAN DRUGGISTS' INSURANCE COMPANY

ARTHUR J. SPECTOR, Bankruptcy Judge.

The Debtor is a general contractor. When it filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 27, 1981, it had work in progress for various governmental entities in at least three states. Barrett Wrecking was one of the Debtor's subcontractors on two of its projects in Wisconsin. Barrett claims that the Debtor breached their contracts by failing to pay amounts due it thereunder. As these were public works projects, the Debtor was required by Wisconsin law to procure payment and performance bonds. Wis.Stat.An. § 779.14. American Druggists' Insurance Company supplied these bonds. Barrett has an independent cause of action against American Druggists' on the payment bond if it is eventually determined that the Debtor is in breach. *Cf. Riley Constr. Co. v. Schillmoeller & Krofl Co.*, 70 Wis.2d 900, 236 N.W.2d 195 (1975); *Christenson v. Diversified Builders, Inc.*, 331 F.2d 992 (10th Cir. 1964), *cert. denied*, 379 U.S. 843, 85 S.Ct. 82, 13 L.Ed.2d 48 (1964); *Northeast Clackamas County Elec. Co-op v. Continental Cas. Co.*, 221 F.2d 329 (9th Cir.1955); *Fountain Sand & Gravel Co. v. Chilton Constr. Co.*, 40 Colo.App. 363, 578 P.2d 664 (1978); *Morgen & Oswood Constr. Co. v.*

*United States Fidelity & Guar. Co.*, 167 Mont. 64, 535 F.2d 170 (1975).

■ The Debtor's Second Amended Chapter 11 Plan of Reorganization, which was confirmed on November 10, 1982, contained a unique method of resolving claims. Instead of providing that the Court would decide the validity and extent of all claims against the Debtor, the plan provided that all claims be submitted to a mediation panel set up through the Bay County, Michigan Circuit Court mediation rule.[1] One wise and wary creditor, probably because it was represented by local counsel, objected to this part of the plan, and the Debtor released it from that provision. The others, including Barrett Wrecking, did not object, and so, this Court's predecessor confirmed the plan including that unique provision. Nobody appealed the order confirming the plan. Consequently, the plan and the order confirming it are binding upon creditors as well as the Debtor. 11 U.S.C. § 1141(a); *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Bizzell v. Hemingway*, 548 F.2d 505 (4th Cir.1977); *Miller v. Meinard-Commercial Corp.*, 462 F.2d 358 (5th Cir.1972); *In re Silver Mill Frozen Foods, Inc.*, 32 B.R. 783 (Bankr.W.D.Mich.1983).

The mediation procedure established through the state court system is a means to facilitate settlement. No evidence is received and no testimony is heard. The "litigants" merely submit "mediation summaries" outlining in offer of proof style what they expect the evidence to establish and how they believe the law applies thereto. The mediators then separately interview the attorneys as to their "bottom line" positions regarding settlement. *See* GCR 1963, 316. Armed with only that, the mediators' job is to divine what figure would most likely result in a settlement of the dispute. With this view of its role, a mediation panel would always award some money to the plaintiff. Alternatively, it has

---

1. The third paragraph of Article VI of the confirmed plan stated:

"If there are any objections to any claims, those claims shall be submitted to binding mediation, pursuant to the Bay County Rules of Mediation. The mediators to determine these claims shall be chosen from the panel of mediators from the Bay County Bar Association and the determination from that panel will be binding as to the allowability of any disputed claims."

been argued that the mediator's role is to guess at what, if any, amount the trier of fact would award the plaintiff after full trial of the case. With this view, it is conceivable that a mediation panel could award zero. When Barrett Wrecking finally became aware of the inherent limitations of the mediation procedure, it objected that it was improper to preclude it from having its day in court on its claim.

Whatever the merits of Barrett's argument (and they are considerable),[2] the time to have objected to the procedure was when the plan was proposed for confirmation. Having waited this long, Barrett Wrecking's objection is simply too late. The plan was confirmed, was not appealed, is now res judicata, and is therefore binding on Barrett. *Stoll v. Gottlieb, supra.* Mediation will determine the extent of Barrett Wrecking's claim against the estate.

■ On September 8, 1982, the Court entered a temporary restraining order prohibiting Barrett Wrecking and numerous other creditors from commencing or continuing any litigation against the Debtor or the Debtor's surety on any payment or performance bonds. On September 30, 1982 the t.r.o. was converted into a preliminary injunctive order to like effect. The surety, American Druggists' Insurance Company, argued in favor of the continuation of the injunction. Barrett Wrecking[3] and other creditors have moved for the dissolution of the order restraining them. Only Barrett's motion is addressed here.

Having already held that the determination of Barrett Wrecking's claim is relegated to the mediation process, this question arises: if the mediators decide Barrett's claim is worth less than the amount it seeks, may Barrett sue the surety for an amount in excess of that, or is it estopped by the doctrine of collateral estoppel from seeking more? The parties briefed this issue. Obviously Barrett argued that it is not estopped. The Debtor argued that it is. Interestingly, American Druggists' agreed with Barrett. So does the Court.

Collateral estoppel rests on the proposition that a person who has had one full and fair opportunity to litigate an issue is bound by the decision and may not demand a second opportunity as against its former adversary or that party's privy. *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981); *Overseas Motors, Inc. v. Import Motors Ltd., Inc.*, 375 F.Supp. 499 (E.D.Mich.1974), *aff'd*, 519 F.2d 119 (6th Cir.1975), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975). A surety is generally considered to be in privity with its principal, and so, if the mediation between Barrett and the debtor is the equivalent of such a "full and fair opportunity to litigate", then the result of that process would probably bind Barrett in any attempted suit against American Druggists'. *Riley Constr. Co. v. Schillmoeller & Krofl Co., supra; Monart Motor Co. v. Home Indem. Co.*, 1 Wis.2d

---

**2.** Aside from the criticism of the procedure found in the body of the opinion, *see infra* p. 720, there simply is no statutory or other foundation for mediation substituting for judicial allowance of claims. Section 502(b) requires that "the court, after notice and a hearing, shall determine the amount of ..." and allow or disallow disputed claims. The mandatory nature of the language indicates that this can only be a judicial function. *Heiser v. Woodruff*, 327 U.S. 726, 741, n. 1, 66 S.Ct. 853, 860, n. 1, 90 L.Ed. 970 (1946) (Rutledge, J., concurring). The only exception to this requirement is provided in Rule 9019(c) which permits the court to submit a matter to binding arbitration (not mediation), if the parties have so stipulated. This rule is not applicable here because arbitration, which involves the taking of proofs, including the testimony of live witnesses, *see, Wright-Bernet, Inc. v. Amalgamated Local Union 41,* 501

F.Supp. 72, 74 (S.D.Ohio 1980); *Ryan-Walsh Stevedoring, Inc. v. General Longshore Workers Union Local 3000*, 509 F.Supp. 463, 467 (E.D.La. 1981); *compare* GCR 1963, 769.3–.5 (re: arbitration) with GCR 1963, 316.6 (re: mediation), was not what is proposed in the plan.

**3.** Actually, Barrett filed a motion to dismiss the Debtor's complaint. However, its brief in support of that relief argued that the Court should not enjoin it from suing American Druggists'. Moreover, this motion was heard together with the motions of two other defendants, which, among other things, sought the quashing of the injunction. Finally, at the hearing, Barrett also requested the lifting of the injunction. Fair notice was given the Debtor and its surety of the relief being sought at the consolidated hearings.

601, 85 N.W.2d 478 (1957). Undoubtedly the claims allowance procedure contained in the Bankruptcy Code provides parties that sort of opportunity. *See* 11 U.S.C. § 502; Bankruptcy Rules 3007 and 9014. As the description of the mediation process made clear, mediation is not litigation. It lacks the procedural and evidentiary safeguards of litigation. It substitutes in lieu of a judge, a disinterested non-judicial entity whose role is not to find the truth but to guess at what others might think it is. Since the issue will not be "actually litigated" through the proposed process, the result cannot be binding upon Barrett outside of the context of the bankruptcy case. Therefore, Barrett would not be collaterally estopped from re-litigating the amount of its claim as against American Druggists'.

Since the mediators will undoubtedly award Barrett something less than it wants, but for the injunctive order prohibiting it Barrett could and would sue American Druggists' for the full amount of its claim less any amount it might already have received directly from the Debtor pursuant to the confirmed plan.

Article VII of the Debtor's plan provides: "At the time of filing this Plan, a complaint and temporary restraining order will be filed with the Court restraining all pre-petition claimants from making or proceeding with any claims against American Druggists, the bonding company in this matter. This injunction will be requested under 11 U.S.C. § 105 to facilitate the administration of this estate. At the present time there are numerous claimants who are listed on the Schedules who are also making claims against American Druggists on the bonds of Dore & Associates. Many of these claims are disputed and can be handled more expediently under the provisions of this Plan rather than in two forums. Consequently, to facilitate administration of this case and settle the disputed claims, a temporary restraining order and preliminary injunction will be requested to restrain any further demands from being made on American Druggists or the continuance of any action to collect under the bond of American Druggists in these matters. American Druggists will further be restrained from making any further payments under these bonds."

The Debtor argues that the mere confirmation of the plan effected a *de facto* permanent injunction and therefore it was under no duty to expeditiously proceed to trial of this adversary proceeding. This is incorrect. When the adversary proceeding was filed, a temporary restraining order was issued, which was subsequently converted into a preliminary injunction. Such orders are orders *pendente lite.* *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981); *Blaylock v. Cheker Oil Co.,* 547 F.2d 962, 965 (6th Cir.1976). Only after a full trial on the merits can a court convert such interlocutory relief into a permanent injunction. *University of Texas v. Camenisch, supra; Diversified Mortg. Investors v. U.S. Life Ins. Co.,* 544 F.2d 571, 576 (2d Cir.1976); *Benson Hotel Corp. v. Woods,* 168 F.2d 694, 696–697 (8th Cir.1948); *United States v. School Dist. of Omaha,* 367 F.Supp. 179 (D.Neb.1973). Trial has not been had nor even scheduled in the two years since the entry of the original stay. During this period the circumstances which arguably supported the original entry of the injunction have evaporated. The principal basis for the injunction was that without such an order the Debtor would have been bound to defend the then numerous lawsuits against its surety and itself filed throughout the nation, which would have so totally occupied the time of its key employees as to have made reorganization impossible. Since then all of the suits and threatened suits but the ones which arise out of the Debtor's contracts in the State of Wisconsin have either been settled or otherwise terminated. Therefore, there no longer exists a reason for enjoining Barrett Wrecking from suing the Debtor's surety on its payment bond. Accordingly, pending trial of this adversary proceeding, the Court will enter an order partially lifting

the preliminary injunction for the benefit of Barrett Wrecking only, so that it can commence, if it wishes, a suit against American Druggists' Insurance Company in the forum of its choice.

Assuming that Barrett is more successful in a trial against American Druggists' than it is likely to be in the mediation against the Debtor, the insurance company will be required to pay Barrett an amount in excess of Barrett's allowed claim in this bankruptcy case. That situation presents this question: would the surety then have a claim against the Debtor in the bankruptcy case for the excess amount it may have to pay Barrett?

The Debtor points to § 502(e) of the Code for the proposition that "the court shall disallow any claim for reimbursement or contribution of any entity that is liable with the debtor on, or has secured, the claim of a creditor, to the extent that—(A) such creditor's claim against the estate is disallowed...." The Debtor argues that if Barrett's claim is partially disallowed in the bankruptcy case, then so should the surety's claim for reimbursement for its payment thereof. This would leave the surety "holding the bag". At this juncture, the resolution of this question is premature; furthermore, American Druggists' has not had the opportunity to brief it. Therefore, no opinion as to this issue is given.

For the reasons stated above, the Court will (reluctantly) require Barrett Wrecking to submit its claim to mediation for the purpose of allowance against the estate only and will modify the preliminary injunctive order to permit Barrett Wrecking to sue American Druggists' Insurance Company in the forum of its choice. An appropriate order may be submitted.